**Jeffrey Lynn WILLIAMS, Appellant,**

v.

**STATE of Texas.**

**No. 72128.**

Court of Criminal Appeals of Texas.

Dec. 18, 1996.

Rehearing Overruled Jan. 29, 1997.

Floyd W. Freed, III, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KELLER, Justice:

At a trial beginning in April of 1995, a jury convicted appellant of committing, on or about October 26, 1994, the capital murder of Barbara Jackson Pullins.[1] The jury answered the punishment issues in the State's favor, and appellant was sentenced to death. Direct appeal to this Court is automatic under Article 37.071 § 2(h).[2] Appellant raises twenty-four points of error on appeal. We will affirm.

### 1. Sufficiency of the evidence

#### a. *Underlying offense*

In point of error six, appellant contends that the trial court erred in denying his motion for a directed verdict of acquittal. In support of this contention, he argues that the evidence was legally insufficient to show that the murder was committed "during the course of a robbery." We disagree.

We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993). Evidence is legally sufficient when, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

---

**1.** Tex.Penal Code § 19.03(a)(2) provides in relevant part that a person commits capital murder when "the person intentionally commits the murder in the course of committing or attempting to commit ... robbery."

**2.** All references to articles refer to the Texas Code of Criminal Procedure unless otherwise indicated.

(1979). This court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Matamoros v. State,* 901 S.W.2d 470, 474 (Tex.Crim.App.1995); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

 Appellant makes three allegations in support of his argument that the murder was not committed during the course of a robbery. He first alleges that the evidence is insufficient to show that he formed the intent to commit robbery before he committed the murder. In a capital murder prosecution for murder during the course of robbery, the State must prove that the defendant formed the intent to rob prior to or concurrent with the murder. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex.Crim.App. 1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). In the present case, Sergeant John Belk testified that appellant confessed to him that his motive for going to the victim's apartment was to steal. This testimony constituted sufficient evidence from which a rational jury could infer that appellant formed the intent to steal from the victim before committing the murder.

 Appellant's second contention is that the state failed to prove that a robbery occurred because it failed to show that the victim did not consent to appellant's taking of the property. The victim's daughter testified that she saw appellant take a cordless telephone, a VCR, a .25 caliber pistol and clip, a jacket, and a television set. Such items would be a highly unusual combination to lend or give to another person. Given the nature and combination of items taken, a rational jury could have inferred that such items were taken without the victim's consent. Moreover, appellant's admitted motive to steal and the fact that he murdered the victim also rationally support the conclusion that the items were in fact stolen, rather than taken with consent.

Appellant's third contention is that the state failed to prove a robbery because the items allegedly taken, except for the jacket, "were not so singular in nature as to be exclusively" the victim's property. But, appellant concedes that the jacket was of such a "singular nature." He notes that the jacket is not contained in the exhibits forwarded to this Court but does not allege any error in connection with the failure to forward the jacket.[3] Moreover, the victim's daughter testified that appellant took several items, and she identified the items at trial. A rational jury could have found that appellant stole the items, and hence, committed a robbery. Point of error six is overruled.

### b. *Future dangerousness*

In point of error five, appellant contends that the evidence is legally insufficient to support a "yes" finding to the future dangerousness special issue.[4] He claims that the evidence is insufficient because the crime involved little planning, he was intoxicated at the time of the murder, his record of convictions involves auto theft rather than assaultive offenses against persons, and he has not exhibited violence in prison.

 The *Jackson* standard of review applies to a legal sufficiency challenge to the evidence supporting a finding of future dangerousness: we determine, in the light most favorable to the verdict, whether any rational jury could answer the future dangerousness issue "yes." *Matamoros,* 901 S.W.2d at 474. While intoxication at the time of the offense and good behavior in prison are factors to consider, neither precludes a finding of future dangerousness. *See Banda v. State,* 890 S.W.2d 42, 50–51 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995) (intoxication); *Emery v. State,* 881 S.W.2d 702, 707 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) (lack of violent behavior in prison). Moreover, the circumstances surrounding the offense, if severe

---

3. Physical evidence is not included in the record on appeal unless ordered by the trial court. Tex. R.App.P., Criminal Cases Appendix Rule 1(b)(5).

4. The issue reads: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071 § 2(b)(1).

enough, may alone be sufficient to support an affirmative answer to the future dangerousness special issue. *Sonnier v. State*, 913 S.W.2d 511, 516–17 (Tex.Crim.App.1995).

 In the light most favorable to the verdict, the circumstances of the offense were as follows: Appellant entered Barbara Pullins' apartment and strangled her with an electrical cord. He tied her feet together with a telephone cord, and after she was dead, he burned her body with various objects, including a clothes iron, a cigarette, and paper towels. Appellant then entered the room of the victim's nine-year old daughter, who was sleeping at the time, and awakened her. After she awoke, appellant forcibly raped her. He hit her in the mouth when she resisted him, and after the sexual assault, he threatened to kill her if she told anyone what had occurred. We think the circumstances surrounding the offense are severe enough by themselves to support the jury's finding of future dangerousness.

Even so, there is other evidence. Between 1985 and 1991, appellant committed at least nine offenses relating to the theft of automobiles. During one of these auto theft offenses, committed on June 12, 1989, a witness, Volchev, saw two cars drive into a ditch near his yard. Several persons exited the vehicles and refused offers of assistance. The engines in the cars were left running, and Volchev noticed that one of the cars had no keys in the ignition. In his car, Volchev followed these persons. When Volchev caught up with them, appellant asked Volchev if he were a member of a secret police and pointed a gun at him. After appellant pointed the gun, Volchev immediately pressed his accelerator and began driving away. Appellant then shot at Volchev and the bullet hit one of the tires on Volchev's car. On the basis of this activity, appellant was subsequently convicted of aggravated assault. A prior violent felony conviction is also persuasive evidence of future dangerousness. *Boyle v. State*, 820 S.W.2d 122, 139 (Tex.Crim.App.1989), *cert. denied*, 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992). Moreover, appellant's extensive history of auto theft offenses combined with the current offense shows that appellant will likely commit more crimes involving the stealing of property and that he is willing to use violence to effectuate such crimes. Both instances of violence involved the use of deadly force, and the present instance of violence can be interpreted as an escalation in the intensity of violence committed. Rational jurors could infer a probability that appellant would escalate his acts of violence even further in the future. We find the evidence to be sufficient to support the jury's answer to the future dangerousness special issue. Point of error five is overruled.

### 2. Motion to quash indictment

In point of error thirteen, appellant claims that the trial court erred in denying his motion to quash the indictment. He argues that the indictment failed to allege an element of capital murder because it alleged that appellant did intentionally "cause the death" of Pullins rather than alleging that appellant intentionally "murdered" her. We have previously decided this issue against appellant. *Ellis v. State*, 726 S.W.2d 39, 45 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987); *Hogue v. State*, 711 S.W.2d 9, 15 (Tex.Crim. App.), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Point of error thirteen is overruled.

### 3. Guilt/innocence

#### a. *Motion to suppress confession*

In point of error one, appellant complains about the trial court's failure to issue written findings of fact and conclusions of law concerning his Motion to Suppress Custodial Statement. On October 9, 1996, we abated this appeal and remanded this cause to the trial court to make such findings and conclusions. In compliance with our order, the trial court made written findings of fact and conclusions of law. Because appellant has obtained the relief requested, point of error one is moot.

#### b. *Jury selection*

In points of error two through four, appellant claims that the State's exercise of peremptory challenges against prospective ju-

rors Randall, Cox, and Baldwin violated his equal protection rights set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In connection with each of the prospective jurors, appellant contends the following: (1) that the prospective juror was perfunctorily examined by the State, (2) that the reason given by the State was not consistent with the voir dire of the prospective juror in question, and (3) that the neutral explanations of the state are nothing more than facially legitimate.

■ A *Batson* inquiry entails a three-step process. First, the opponent of a peremptory challenge must make out a prima facie case of racial discrimination. *Purkett v. Elem*, 514 U.S. 765, ——, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834, 839 (1995). Then, the proponent of the strike must come forward with a race-neutral reason for the challenge. *Id.* Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. *Id.* For the purpose of step two, a reason is deemed race-neutral so long as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or implausible. *Id.* Whether the trial judge believes a proffered race-neutral reason is a step-three inquiry, and the opponent of the strike bears the burden of showing that the reason offered is merely a pretext for discrimination. *Id.*

■ In response to appellant's *Batson* challenge during voir dire, the State gave race-neutral reasons for its decision to challenge the prospective jurors in question. The state argued that Randle and Cox were predisposed against the death penalty. Randle indicated that she would never impose the death penalty on individuals younger than twenty-five years of age. On a questionnaire, she agreed with the proposition that the death penalty is never effective in preventing crime, that it is imposed randomly, and that a person's economic status probably affects whether or not he receives the death penalty. She also agreed with the proposition that she does not believe in capital punishment, but it is not practically advisable to abolish it. Randle also stated that she would not impose the death penalty if the

alternative is a life sentence without the possibility of release for forty years. Cox indicated in her questionnaire that she did not feel it was right for any man to take another person's life, and she indicated that she believes that life imprisonment is more effective than capital punishment. She also indicated that she believed that the death penalty should never be imposed if the alternative is a sentence of life without the possibility of release for forty years.

■ As for prospective juror Baldwin, she stated during voir dire that serving on the jury would bother her because the offense happened in her neighborhood and she would recognize some of the witnesses or they would recognize her. The trial court summarily overruled appellant's *Batson* objection by holding Baldwin's reluctance to serve on the jury to be a race neutral reason for the exercise of a peremptory challenge.

Appellant concedes in his brief that the explanations offered are "facially legitimate." Although he conclusorily alleges that the reasons given are inconsistent with the voir dire of the prospective jurors, he does not state what he believes the inconsistencies to be, nor does he attempt to show in any other fashion that the alleged race-neutral reasons are merely a pretext for discrimination. We have previously recognized that a prospective juror's views about the death penalty constitutes a race-neutral reason for a peremptory challenge. *Lewis v. State*, 911 S.W.2d 1, 4 (Tex.Crim.App.1995). Likewise, no discriminatory intent is inherent in striking a juror because she does not wish to serve. Hence, in the present case, race-neutral reasons support the prosecutor's strikes, and appellant has failed to carry his burden of showing intentional discrimination. Points of error two through four are overruled.

■ In point of error twenty-one, appellant complains about the trial court's refusal to grant an additional peremptory challenge. He notes that he was forced to exercise peremptories against four prospective jurors after the trial court denied his challenges for cause. Granting an extra peremptory strike is a remedy that a trial court can give to cure an erroneously denied

challenge for cause. *Colella v. State*, 915 S.W.2d 834, 843 (Tex.Crim.App.1995). A defendant must seek such relief before he can complain about the denial of a challenge for cause on appeal. *Id.* Although appellant gives reasons for challenging the various prospective jurors for cause, he cites no legal authority for any of his challenges. His contentions, therefore, are inadequately briefed. Rule 74(f); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App.), *cert. denied*, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). Point of error twenty-one is overruled.

### c. *Incomplete record*

In point of error seven, appellant complains about the court reporter's failure to take notes of and transcribe the audio portion of a videotaped statement that was played to the jury during the guilt/innocence and punishment phases of the trial.[5] He contends that the resulting absence of the videotaped statement from the statement of facts entitles him to a new trial on the basis of an incomplete record under Rule 50(e).[6] In the alternative, he requests that this Court direct that the statement of facts be amended pursuant to Rule 55.

■■■ Appellant filed a timely request for the court reporter to record the proceedings. However, the court reporter did not take notes during the playing of appellant's videotaped statement to the jury. The record shows that appellant did not object to the failure of the court reporter to take notes while the videotape was played during the guilt/innocence stage. Further, appellant has not alleged that he ever objected at any stage of the trial to the court reporter's failure to record appellant's videotaped statement.

■■■ We hold that the present situation is not governed by Rule 50(e). Rule 50(e) provides:

**Lost or Destroyed Record.** When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases. If the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been *lost or destroyed* without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts.

(Emphasis added). The rule, by its plain wording, clearly applies only in situations in which a portion of the proceedings was recorded, but was later lost or destroyed. When the complaining party cannot show that the court reporter ever *recorded* the missing proceedings, he is not entitled to a new trial under Rule 50(e). *Gibbs v. State*, 819 S.W.2d 821, 827–28 (Tex.Crim.App.1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992) (pretrial hearings). *See also McClendon v. State*, 643 S.W.2d 936, 939 (Tex.Crim.App.1982) (final arguments in punishment phase of trial). In several cases where we upheld a reversal and remand for new trial under Rule 50(e), we distinguished previous cases on the ground that they involved records that were never made as opposed to records that were made but lost or destroyed. *Emery v. State*, 800 S.W.2d 530, 535 (Tex.Crim.App.1990) (distinguishing *Walthall* and *Wells*; see below); *Dunn v. State*, 733 S.W.2d 212, 216 & 216 n. 8 (Tex. Crim.App.1987) (distinguishing *McClendon* ). *See also Lewis v. State*, 844 S.W.2d 750, 751–52 (Tex.Crim.App.1993) (finding no merit in State's argument that appellant did not request court reporter because court reporter admitted that she took notes and those notes were lost). Two courts of appeals have specifically addressed a court reporter's failure to take notes when a videotape was played to the jury. Both held that Rule 50(e) did not apply because there were no notes to lose or destroy. *Lascurain v. Crowley*, 917 S.W.2d

---

5. The videotape was played in redacted form during the guilt/innocence phase. Appellant claims that the videotape was played in its entirety during the punishment phase but does not make a specific citation to the record. For the purpose of this discussion we will assume that

the videotape was in fact played during the punishment phase as appellant claims.

6. All references to rules are to the Texas Rules of Appellate Procedure unless otherwise provided.

341, 344–45 (Tex.App.—El Paso 1996); *Rogers v. CIGNA Ins. Co. of Texas,* 881 S.W.2d 177, 181 (Tex.App.—Houston [1st Dist.] 1994). We agree with these holdings.

■ For the same reason, the record cannot be supplemented under Rule 55. Rule 55(b) permits supplementation "[i]f anything material to either party is *omitted* from the transcript or statement of facts" (emphasis added). We have stated that this rule permits supplementation of the record only with material that existed when the record was prepared but was not included in the record forwarded to the appellate court. *Green v. State,* 906 S.W.2d 937, 940 n. 3 (Tex.Crim.App.1995). Several courts of appeals have reached the same conclusion. *The Home Ins. Co. v. Hambric,* 906 S.W.2d 956, 959 (Tex.App.—Waco 1995) (videotape testimony); *Rogers,* 881 S.W.2d at 180–81 (videotape testimony). *Disco Mach. of Liberal Co. v. Payton,* 900 S.W.2d 71, 74–75 (Tex.App.—Amarillo 1995) (rendition of judgment); *Graham v. Pazos De La Torre,* 821 S.W.2d 162, 165 (Tex.App.—Corpus Christi 1991, writ denied) (bankruptcy court order); *Gerdes v. Marion State Bank,* 774 S.W.2d 63, 65 (Tex.App.—San Antonio 1989, writ denied) (file mark).

The foregoing discussion does not mean that a defendant can never obtain relief if the court reporter fails to record certain proceedings. But, to preserve error on such a claim, a defendant must object before the trial court to the court reporter's failure to do so. *Walthall v. State,* 594 S.W.2d 74, 81 (Tex.Crim.App.1980) (bench conferences); *Wells v. State,* 578 S.W.2d 118, 119 (Tex.Crim.App.1979) (voir dire). In the present case, appellant does not show he ever made an objection.[7] Point of error seven is overruled.

### d. *Admission of photographs*

■ In points of error eight and nine, appellant contends that the trial court erred in admitting autopsy and crime scene photographs into evidence. He argues that the photographs should have been excluded under Texas Rule of Criminal Evidence 403, which requires exclusion of evidence when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[8] However, other than stating that the photographs caused "the jury to rely upon emotion in rendering its verdict," appellant does not explain why he believes the photographs were unfairly prejudicial. In at least two prior instances, we have pointed out a capital defendant's failure to explain why photographs are inflammatory or unfairly prejudicial. *Penry v. State,* 903 S.W.2d 715, 752 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). We hold that appellant's failure to explain why the photographs would "cause a jury to rely upon emotion" constitutes inadequate briefing under Rule 74(f). *See Lawton v. State,* 913 S.W.2d 542, 554 (Tex.Crim.App. 1995) (failure to explain what arguments were prejudicial); *Alvarado v. State,* 912 S.W.2d 199, 210 (Tex.Crim.App.1995) (failure to explain why state's efforts at rehabilitation were inadequate); *Norris v. State,* 902 S.W.2d 428, 442 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995) (failure to explain how trial was fundamentally unfair); *Garcia v. State,* 887 S.W.2d 862, 876 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995) (failure to explain allegation of prosecutorial misconduct).

■ He also claims that the photographs were cumulative of other evidence because the state possessed the witness testimony of the complainant's sister and a statement made by appellant. Appellant further claims that the state did not need the photographs

---

**7.** Appellant also argues that, absent a transcription, he cannot comply with Rule 74(f)'s requirement that he specifically identify portions of the videotape statement relevant to his points of error. By failing to object, appellant has forfeited any error.

**8.** Texas Rule of Criminal Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

because defense counsel did not attack identity in cross-examination and appellant did not testify during the guilt/innocence phase of the trial. We have held that autopsy photographs are relevant to show the identity of the victim and the manner and means of death. *Penry,* 903 S.W.2d at 751. Moreover, such photographs are admissible under Texas Rule of Criminal Evidence 403 even if they merely corroborate other kinds of evidence. *Id.* at 744–45 & 751. *See also Cohn v. State,* 849 S.W.2d 817, 820–21 (Tex.Crim. App.1993) (evidence not excludable under Rule 403 merely because it corroborates the testimony of an earlier witness). Points of error eight and nine are overruled.

### e. *Admission of identification testimony*

In point of error ten, appellant complains that the trial court erred in permitting the victim's daughter to identify appellant before the jury. He alleges that the in-court identification was tainted by an impermissibly suggestive photo array.

 Due process requires the suppression of an in-court identification only if:

(1) an impermissibly suggestive out of court procedure

(2) gave rise to a very substantial likelihood of irreparable misidentification.

*Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Crim.App. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). In the present case, appellant alleges merely his "singular pose as being suggestive of guilt." He makes no further explanation concerning why the photo array is impermissibly suggestive, nor does he explain how the alleged suggestiveness gave rise to a substantial likelihood of irreparable misidentification. Appellant's lack of explanation with regard to his claim constitutes inadequate briefing under the same authorities cited in connection with points of error eight and nine. Point of error ten is overruled.

### f. *Voluntary intoxication charge*

In point of error twenty-three, appellant contends that the trial court violated the Due Process clause of the Fourteenth Amendment by including in the jury charge an instruction that voluntary intoxication does not constitute a defense to the commission of a crime. Appellant relies upon *State v. Egelhoff,* 272 Mont. 114, 900 P.2d 260 (1995) in support of his position. However, the Supreme Court reversed the Montana case and decided the issue adversely to his position. *Montana v. Egelhoff,* 518 U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). Point of error twenty-three is overruled.

### 4. Punishment

### a. *Exclusion of psychiatric testimony*

 In point of error fourteen, appellant contends that the trial court erred in sustaining objections to relevance regarding defense psychiatric testimony concerning age as a factor in determining future dangerousness. We set out the relevant portion of the testimony as follows (questioning by defense counsel):

Q. Is it—is there any data available to you in your profession to tell you as to what demographic group accounts for the majority of violent crimes in our society.

[PROSECUTOR]: I object, your Honor to the relevance.

THE COURT: That will be sustained.

Q. Is there a tendency of people as they grow older into middle age to mellow or lessen any propensity for violence they may have?

A. The data indicates it seems to drop off as they middle age.

Q. What is middle age?

A. 50 or older.

Q. For instance, I might say I'm middle aged but I don't know anybody that's 118 either.

A. Right.

Q. Is there data you rely on for the demographic of the profile of the violent offender?

A. Yes. There are demographics and data about that.

Q. What age group is involved there?

[PROSECUTOR]: Your Honor, I object to the age group about demographics

THE COURT: That will be sustained.

[DEFENSE COUNSEL]: It has to do, Your Honor, with future dangerousness.

THE COURT: The objection was sustained, Mr. McCullough.

Q. Well, based on your testimony about the mellowing effect of the approach of middle age for violent offenders, do they tend to be older or younger than middle age?

A. They tend to be younger.

The above excerpt shows that, each time after the trial court sustained the State's objection, defense counsel continued to ask questions regarding the subject matter and elicited answers to those questions from the witness. The State did not object to these follow-up questions, nor did the State request or receive an instruction to disregard the testimony elicited. If the trial court erred in sustaining the State's objection, any such error was cured when defense counsel successfully elicited testimony concerning the same subject. *See Wilford v. State,* 739 S.W.2d 854, 865 (Tex.Crim.App.1987) (noting that subsequently elicited testimony rendered error "harmless"). Moreover, appellant failed to make an offer of proof. To preserve error regarding the exclusion of evidence, an offer of proof is required. Tex. R.Crim.Ev. 103(a)(2); *Love v. State,* 861 S.W.2d 899, 900–901 (Tex.Crim.App.1993). Although error may be preserved if the substance of the excluded evidence was apparent from the context in which the questions were asked, Rule 103(a)(2), appellant actually elicited, without objection, evidence conforming to the questions to which objections had been sustained. Any further testimony that appellant may have wished to elicit is not apparent from the context. Point of error fourteen is overruled.

### b. *Parole law*

In point of error twenty-two, appellant contends that the trial court erred by refusing to permit him to advise jurors of applica-

ble parole law during voir dire and jury argument. He alleges that this refusal violated his rights under the Eighth and Fourteenth Amendments to the federal constitution and under Article I § 19 of the state constitution. We have previously decided this issue adversely to appellant's position. *Broxton v. State,* 909 S.W.2d 912, 918–919 (Tex.Crim.App.1995).[9] Point of error twenty-two is overruled.

### c. *Denial of requested charges*

In point of error fifteen, appellant contends that the trial court erred by refusing to define the word "probability" in the punishment jury charge. He argues that the failure to define the word "probability" violates his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and under Article I § 19 of the Texas Constitution. We have held repeatedly that "probability" need not be defined in the jury charge. *Chambers v. State,* 903 S.W.2d 21, 35 (Tex.Crim.App. 1995); *Garcia v. State,* 887 S.W.2d 846, 859 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); *Clark v. State,* 881 S.W.2d 682, 698 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995). Appellant offers no persuasive reason to revisit the issue. Point of error fifteen is overruled.

 In point of error twenty, appellant contends that the trial court erred by refusing to include in the punishment charge an instruction on voluntary intoxication as a mitigating factor. He argues that, having given a charge concerning voluntary intoxication in the guilt stage of the trial, the trial court violated due process and equal protection by refusing to give his requested charge in the punishment phase. We have previously held that the federal constitution does not require an instruction concerning voluntary intoxication as it might relate to mitigation of punishment. *San Miguel v. State,* 864 S.W.2d 493, 495–96 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1337,

---

9. Because appellant does not explain how the protection offered by the state constitution differs from that of the federal constitution, we reject his state constitutional argument. *See Broxton,* 909 S.W.2d at 919 n. 9.

127 L.Ed.2d 685 (1994).[10] In fact, there is no constitutional requirement that the jury be charged concerning any particular circumstance alleged to be mitigating. *Penry*, 903 S.W.2d at 766. Appellant's only argument for treating his case differently is that, having been given an instruction relating to intoxication at the guilt stage, the jury might become confused and erroneously apply that instruction to the punishment phase as well. However, we assume that the jury would follow the instruction as given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge. *See Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim.App.1987) (plurality opinion). No such evidence is present in this case. Point of error twenty is overruled.

### d. Constitutional challenges to death penalty scheme

In points of error sixteen through nineteen, appellant contends that Article 37.071 § 2(d)(2) [11] and the trial court's charge in this case violate the federal and state constitutions by preventing jurors from individually considering and giving effect to circumstances mitigating against the death penalty.[12] He specifically contends that the statute's requirement that ten or more jurors must agree in order to answer certain special issues "no" violates the proscriptions set forth by the Supreme Court in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100

L.Ed.2d 384 (1988) and *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).[13] We have previously decided this issue against appellant's position. *Lawton*, 913 S.W.2d at 558–59; *Hughes*, 897 S.W.2d at 300. Points of error sixteen through nineteen are overruled.

In point of error twelve, appellant contends that Article 37.071 § 2(a), which prevents the jury from being informed about the effect of a failure to agree on answers to special issues,[14] is unconstitutional under the Eighth and Fourteenth Amendments of the federal constitution and under Article I § 19 of the Texas constitution.[15] We have previously decided this question adversely to appellant's position. *Draughon v. State*, 831 S.W.2d 331, 337–38 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); *Hughes*, 897 S.W.2d at 300. Point of error twelve is overruled.

In point of error eleven, appellant argues that Article 37.071 § 2(b) [16] is unconstitutional because it encourages the jury to consider mitigating evidence in an aggravating manner. The premise underlying appellant's argument is flawed, however, because no evidence is mitigating as a matter of law; the jury is free to give any particular type of evidence whatever mitigating or aggravating weight it feels is appropriate under the circumstances. *Lawton*, 913 S.W.2d at 556 (declining to conduct sufficiency review of miti-

**10.** Texas law requires an instruction on voluntary intoxication as a mitigating factor in punishment if temporary insanity, caused by voluntary intoxication, is raised by the evidence. Texas Penal Code § 8.04(b) & (c); *San Miguel*, 864 S.W.2d at 495–96. Appellant does not allege that the evidence raises the temporary insanity issue.

**11.** The provision states:
The court shall charge the jury that: ...
(2) it may not answer any issue submitted under subsection (b) of this article "yes" unless it agrees unanimously and it may not answer any issue "no" unless 10 or more jurors agree; ... (Ellipses inserted).

**12.** Appellant does not allege that the Texas Constitution provides broader protection than the federal constitution in this area of the law. Therefore, we address the issue solely on federal grounds. *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 852,

114 S.Ct. 154, 126 L.Ed.2d 115 (1993). *See also Hughes v. State*, 897 S.W.2d 285, 300 n. 22 (Tex.Crim.App.1994).

**13.** Those cases held that "the United States constitution is offended by requirements that mitigating evidence may be given effect only by the unanimous vote of the jury." *Lawton*, 913 S.W.2d at 558.

**14.** Appellant has mislabeled the provision he attacks as Article 37.071(2)(g). Based upon the content of his point of error, we presume he actually intended to attack Article 37.071 § 2(a), and we treat his point of error accordingly.

**15.** We decline to address appellant's Texas constitutional claim because it is not adequately briefed. *See* footnote 12.

**16.** This provision contains the future dangerousness special issue. *See* footnote 4.

gating evidence); *Curry v. State*, 910 S.W.2d 490, 497 (Tex.Crim.App.1995) (disavowing an instruction that would preclude a jury from giving mitigating evidence aggravating effect); *Clark*, 881 S.W.2d at 699 (upholding trial court's decision to permit State in argument to portray allegedly mitigating evidence as aggravating). Point of error eleven is overruled.

In point of error twenty-four, appellant complains that the trial court erred in denying his "Motion to Declare the Texas Capital Sentencing Scheme Unconstitutional and Motion to Preclude Imposition of the Death Penalty." He incorporates by reference a motion by this name filed with the trial court. The motion advances ten arguments against the current death penalty scheme. We address each in turn.

 In his first argument, appellant contends that the statutory mitigation special issue [17] is unconstitutional because it fails to place on the State the burden of proving aggravating circumstances. Appellant contends that the mitigation issue's language concerning "sufficient" mitigating circumstances requires an evaluation of aggravating circumstances along with the alleged mitigating circumstances. He further contends that the federal constitution requires the State to prove any such aggravating circumstances used by a jury to answer the mitigation special issue. To support his argument, appellant relies upon language in *Walton v. Arizona*:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) (plurality portion of opin-

ion by White, J.). We do not believe that *Walton* is controlling. First, the portion of the opinion cited by appellant is a mere plurality. Second, the statutory scheme evaluated in *Walton* permits assessment of the death penalty for any intentional murder based upon the weighing of specifically enumerated aggravating and mitigating factors. *Id.* at 643–44, 110 S.Ct. at 3051–52. By contrast, the Texas scheme channels the jury's discretion by narrowing the kinds of intentional murders that carry the death penalty, *see* Texas Penal Code § 19.03(a), and by requiring the jury to answer a future dangerousness special issue—and on both of these aggravating elements, Texas law imposes the burden of proof upon the State. The Supreme Court has recognized that, once the eligibility for the death penalty has been narrowed, a state is permitted to give the jury an open-ended question concerning the appropriateness of the death penalty in a particular case. *Tuilaepa v. California*, 512 U.S. 967, —— ————, 114 S.Ct. 2630, 2637–40, 129 L.Ed.2d 750, 763–65 (1994). Such an open-ended question may entail unbridled discretion and may include a consideration of both aggravating and mitigating circumstances. *Id.* Because Texas law imposes the burden of proof upon the State to prove certain prescribed aggravating elements, a burden of proof need not be prescribed for aggravating circumstances that might be considered in conjunction with Texas' open-ended mitigation issue.

In appellant's second argument, he contends that Texas' statutory mitigation issue constitutes open-ended discretion condemned by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This issue has been decided adversely to appellant's position. *McFarland v. State*, 928 S.W.2d 482, 519–20 (Tex.Crim.App.1996); *Tuilaepa*, 512 U.S. at —— ————, 114 S.Ct. at 2637–40, 129 L.Ed.2d at 763–65 (1994).

In his third argument, appellant contends that the mitigation issue violates the Eighth

---

**17.** The mitigation special issue asks:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Article 37.071 § 2(e).

and Fourteenth Amendments because it does not permit meaningful appellate review. We have decided this issue adversely to his position. *McFarland*, 928 S.W.2d at 498–99.

In his fourth argument, appellant contends that the "anti-parties" special issue set out in Article 37.071 § 2(b)(2) [18] violates the Eighth Amendment. We decline to address this argument because the issue in question was not submitted in appellant's punishment jury charge.

In his fifth argument, appellant contends that the statutory definition of mitigating evidence is unconstitutionally narrow.[19] But, to raise a mitigating evidence claim, a defendant must show that he would have offered relevant mitigating evidence that could not have been used by the jury to answer one of the special issues submitted. *Richardson v. State*, 901 S.W.2d 941, 942 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995). Appellant does not allege any mitigating circumstances beyond the scope of the issues submitted to the jury.

In his sixth argument, appellant adopts Justice Blackmun's dissent about why capital punishment is cruel and unusual. We have recently rejected Judge Blackmun's dissent. *Matchett v. State*, No. 71,664, slip op. at 22, —— S.W.2d ——, ——, 1996 WL 638228 (Tex.Crim.App., delivered November 6, 1996) (published in part). Appellant also argues that the Texas constitution provides greater protection than the United States constitution. He points out that the Texas constitution proscribes "cruel *or* unusual" punishments while the federal constitution proscribes "cruel *and* unusual" punishments, and he relies upon a California case, *People v. Anderson*, 6 Cal.3d 628, 100 Cal.Rptr. 152, 155–59, 493 P.2d 880, 883–87 (1972), interpreting a similarly worded provision. We have recently rejected this particular conten-

tion. *Anderson v. State*, 932 S.W.2d 502, 509–10 (Tex.Crim.App.1996).

In his seventh argument, appellant contends that the 10–12 rule, requiring at least ten "no" votes for the jury to return a negative answer to the future dangerousness special issue and at least ten "yes" votes to return an affirmative answer to the mitigation issue, violates the Eighth Amendment principles discussed in *Mills* and *McKoy*. We have already addressed and rejected this argument in points of error sixteen through nineteen.

In his eighth argument, appellant contends that Article 37.071 § 2(a), which prevents the jury from being informed about the effect of a deadlock on a punishment special issue, violates the Eighth and Fourteenth Amendments. We have already addressed and rejected this contention in point of error twelve.

In his ninth argument, appellant contends that the death penalty is unconstitutional under the Eighth Amendment and the Equal Protection clause of the Fourteenth Amendment and analogous provisions in the Texas constitution because of the many revisions that have occurred, producing different sentencing schemes for offenses committed at different times. We have recently rejected this type of argument. *McFarland*, 928 S.W.2d at 521–22.

In the tenth argument and final argument in his motion, appellant contends that the refusal to instruct on parole law during the punishment phase violates the Eighth and Fourteenth Amendments to the United States Constitution. We have already addressed and rejected this contention in point of error twenty-two. Point of error twenty-four is overruled.

The trial court's judgment is AFFIRMED.

CLINTON, J. dissents to the resolution of point of error seven, and otherwise concurs in the result.

---

18. The statute provides that the issue shall read: [W]hether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

19. Mitigating evidence is defined as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." Article 37.071 § 2(f)(4).

WHITE, J. not participating.

BAIRD, J. concurs.

For the reasons stated in *Matamoros v. State*, 901 S.W.2d 470, 479 (Tex.Cr.App.1995) (Baird, J. concurring), I again object to the gratuitous naming of the decedent in this case. This practice is particularly objectionable in the instant case because appellant forcibly raped the decedent's nine year old daughter. Therefore, even though the Court's opinion does not name the child, it accomplishes the same by naming her mother. This is contrary to our policy in child victim cases. *See e.g., Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Cr.App.1991). For these reasons, I join only the judgment of the Court.

OVERSTREET, Justice.

For reasons I have previously stated in *Morris v. State*, —— S.W.2d ——, 1996 WL 514833 (Tex.Cr.App. No 71,799, delivered September 11, 1996) (Overstreet, J., dissenting), I dissent to the treatment of point of error number twenty-two, which avers error in precluding appellant from advising veniremembers of the fact that a defendant sentenced to life for capital murder would be required to serve a minimum of 40 years before becoming eligible for parole.