11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Aurelio
Munoz, III

Appellant

Vs.                   No. 11-03-00354-CR -- Appeal from Midland County

State
of Texas

Appellee

 

Aurelio Munoz, III appeals his conviction by a
jury of the offense of retaliation.  The
trial court assessed his punishment at 5 years in the Texas Department of
Criminal Justice, Institutional Division, and a fine of $500.  The trial court suspended the imposition of
Munoz=s
sentence and placed him on community supervision for 10 years.  In three issues, Munoz urges that the trial
court erred in denying his request for an instructed verdict and that the
evidence was legally and factually insufficient to sustain a conviction for
retaliation as alleged in the indictment. 
We affirm.

We treat an issue complaining of a trial court=s denial of a motion for directed
verdict as a challenge to the legal sufficiency of the evidence.  Williams v. State, 937 S.W.2d 479, 482
(Tex.Cr.App.1996).  In a legal
sufficiency review, we view all of the evidence in the light most favorable to
the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307 (1979).  In a factual sufficiency
review, we view all of the evidence in a neutral light; and we will set the
verdict aside only if the evidence is so weak that the verdict is clearly wrong
and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met.  See Zuniga
v. State, 144 S.W.3d 477, 484-85 
(Tex.Cr.App.2004).








A person commits an offense if he or she
intentionally or knowingly harms another by an unlawful act in retaliation for
or on account of the service or status of another as a public servant, witness,
prospective witness, or informant or as a person who has reported or who the
actor knows intends to report the occurrence of a crime.  TEX. PEN. CODE ANN. '
36.06(a)(1) (Vernon Supp. 2004 - 2005). 
The indictment alleged that Munoz intentionally and knowingly threatened
the complainant, Vaino Antero Arminen, by threatening to assault him in
retaliation for and on account of his service as a Aperspective@ (sic) witness and as a person Munoz
knew intended to report the occurrence of a crime.  

Arminen identified Munoz as a former neighbor in a
Midland County apartment complex.  He
said Munoz had lived in the apartment right above his.  He indicated that Munoz would often have
parties in the middle of the night that began to be louder and louder.  He related that, on the evening of March 26,
2003, when he was leaving his apartment about 8:00 or 8:15, he had a
confrontation with Munoz and others over their spitting on his sidewalk from
the balcony above.  

Arminen testified that he returned from eating,
watched television, and then retired about 11:00 p.m.  He said he did not sleep very well because of
the excessive noise upstairs.  He stated
that he called the police about 1:00 a.m. 
He said that, in a few minutes, the police came and that he waved at
them and went back to bed, thinking the ordeal was over.  He indicated that, when there was really loud
jumping about 15 minutes later, he called the police again, only to be told
they were still there. He said that he did not hear any threats against him but
that there was Akind of@ increasing hostility toward him and Akind of intimidation@ against him.  

Gregory Dewayne Snow testified that he is a patrol
officer for the Midland Police Department. 
He reported being dispatched to Arminen=s
apartment complex in response to a complaint regarding a loud party with loud
music.  He said that, when he and Officer
Richard Moore arrived, they could hear loud music and loud noises coming out of
an apartment above that of Arminen.  He
indicated that they appeared to be in violation of Midland=s noise ordinance and of the disorderly
conduct statute.  He related that, if
someone reports loud music, there is a possibility they would become a witness
to that crime.    








Officer Snow testified that, when Officer Moore
knocked on the door at the location of the party, those inside responded by
screaming and cussing through the door at him. 
He indicated that usually a loud music call consists of asking those who
come to the door to turn the music down, and then they do it.  He related that the volume of their singing
increased.  According to Officer Snow,
Officer Moore left temporarily to find Sofia Garcia, the manager of the
complex.  Officer Snow testified that,
after Officer Moore left, the occupants of the apartment continued singing and
cussing.  He said that, at one point,
someone said:  AYou
are Officer Moore, Officer Richard Moore, Dickie Moore, Dick Moore.@ 
Officer Snow indicated that they were making fun of Officer Moore=s nickname.  According to Officer Snow, the occupants told
Officer Moore to come in, in a disrespectful and threatening manner.  He indicated that, from his perspective,
according to his training and experience, when people start behaving in that
manner, they continue to get more and more aggressive.  He insisted that someone inside mentioned
something about a Agat,@ which he stated is slang for Agun.@  He stated that they yelled that the officers
had better get a search warrant and that maybe they should just come back the
next morning.  

Officer Snow testified that next there was a large
and crashing boom, followed by a shaking. 
He said that it sounded like the occupants of the apartment were jumping
up and slamming their feet on the floor, which was above Arminen=s apartment.  He said that they next started calling
Arminen a Abitch,
and a f-----g bitch.@  Officer Snow indicated that he called for a
sergeant because of his feeling that the occupants of the apartment were
getting more and more aggressive.  

Officer Snow testified that, after Officer Moore
returned with Sofia Garcia, the apartment manager, someone opened the door of
the apartment and began screaming and cussing out the door.  He indicated that they were Amustering@
their courage to come outside.  He said
that he saw a black male standing at the threshold of the door screaming and
cussing at Arminen.  Officer Snow said
that, after this man backed up, he could hear someone say that, when they saw Athe Russian@
(Arminen), they were Agoing
to snatch that toupee off his head.@  He stated that Munoz subsequently stepped
outside and spit down right in front of Arminen=s
apartment.  Officer Snow indicated that,
after he spit, Munoz said:  ACall the laws again, and see what
happens when I catch you.@  Officer Snow testified that he was afraid
that, if he did not take immediate action, the occupants of the apartment would
go downstairs and either confront Arminen personally or harm his property.  Officer Snow characterized Munoz=s threat as a threat of an
assault.  Officer Snow acknowledged on
cross-examination that he had not informed Munoz as to who had called in the
complaint.  On redirect examination, he
testified that the person who calls 911 is a prospective witness.    








Garcia testified that, on the occasion in
question, she was the apartment complex manager.  She said that, when she approached Munoz=s apartment, she could hear a lot of
screaming and yelling coming from it, even with the doors closed.  She said that she heard Munoz come out and
say:  ABitch,
if you call the cops, see what happens to you.@  She characterized it as a loud yell.  She said that Arminen was inside at the
time.  She denied discussing with Munoz
who had called in the complaint.  She
acknowledged that Munoz did not threaten to do any physical harm to Arminen.  She insisted, however, that Munoz=s comment constituted a threat.  

Officer Moore testified that he is a police
officer in the Midland Police Department. 
He said that, when he arrived at the scene of the loud music complaint,
he heard loud music and voices coming from Munoz=s
apartment.  He stated that, when he
knocked on the apartment door, the occupants responded with expletives, said
that they were not opening the door, and told the officers to go get a warrant.  He related that he went to get Garcia, the manager,
and that Arminen was not outside when they returned.  He insisted that they heard someone, talking
about Arminen, saying:  AI=ll
snatch the toupee off your head@
and ACall the
laws again and see what happens when I catch you.@  He acknowledged that he did not see who made
the statements.  He said that the word Abitch@
in street terms can be a demeaning term to a male.  








In his motion for directed verdict, Munoz argued
that the evidence was insufficient because the threat was not immediate and
because it did not anticipate that Arminen was a prospective witness in the
case, that he was going to report any crime, or that he had already reported
any crime.  In his brief, he translates
those reasons as being that he made no threat and lacked knowledge that his
neighbor was a prospective witness.  He
refers us to the following statements made by Officer Moore:  AThere
was a lot of cussing.  There was no
actual threats that I heard at that point.@  He also refers us to Garcia=s testimony that Munoz did not
physically threaten Arminen and her testimony that Munoz=s
comment was a threat.  Munoz suggests in
his brief that he did not know that Arminen intended to report the occurrence
of a crime or that Arminen was the person who called the police.  He insists that the evidence is insufficient
because there was no overt action on Munoz=s
part and no clear threat of an assault. 
He argues that, from his standpoint, it was unlikely for him to think
that there would be any charges filed because there had been none filed in the
past on occasions when he was cooperative with the police.  

The two basic issues that Munoz raises is whether
he threatened Arminen with assault and whether Arminen was a prospective
witness or one whom Munoz knew intended to report the occurrence of a
crime.  We hold that, from the evidence
as we have related it, a rational jury could have found that Munoz threatened
Arminen with an assault, that he knew that Arminen was a prospective witness,
and that he knew that Arminen intended to report the occurrence of a crime.  

Munoz suggests that the statement made by him was
not a threat or, if a threat, not a threat of an assault; however, the jury
could have determined from all of the evidence, including the escalating
aggressive behavior of all involved and a discussion by someone in the
apartment concerning taking off Arminen=s
toupee, that, when Munoz was warning Arminen of what would happen to him when
Munoz caught him if he called the police again, he was threatening him with
physical assault.  Munoz relies in part
upon our case of Davis v. State, 890 S.W.2d 489 (Tex.App. - Eastland
1994, no pet=n).  In Davis, the court found that the
defendant threatened to kill a social worker for Child Protective Services who
was considering the termination of the defendant=s
par-ental rights.  In Davis, the
defendant stated that he had a criminal mind, that he was Atired of all you people...messing with
me,@ and that he was thinking like George
Lott did when he Akilled
all those people.@  Id. at 491.  The court stated in a footnote that George
Lott shot and killed two people and wounded three others in the courtroom of
the Fort Worth Court of Appeals on July 1, 1992.  Id. at n.1.  The court held that, in order to support a
conviction for retaliation, a threat need not be direct.  Id. 
We hold that Davis supports and is not inconsistent with our
holding that Munoz threatened Arminen with assault.  








The next issue is whether the evidence is
sufficient to show that the threat was directed at Arminen, whether Arminen was
a prospective witness or someone whom Munoz knew intended to report the
occurrence of a crime, and whether Munoz knew that Arminen was a prospective
witness. Munoz suggests that the threat was not asserted directly to Arminen and
that the evidence does not show that he knew that Arminen was the person who
had reported the loud party to the police. 
A rational jury could have determined from the evidence that the threat
was directed at Arminen and that Munoz knew that he was a prospective witness
or someone who intended to report the occurrence of a crime.  Just prior to the threat, the occupants of
the apartment were directing profane comments toward Arminen, calling him a Af-----g bitch.@  Officer Snow talked to Arminen at his
apartment door shortly after the officers arrived at the apartment
complex.  Arminen=s
apartment was directly below where Munoz was standing when he made the
threat.  From all of the evidence, a
rational jury could have concluded that Munoz knew that it was Arminen who had
called the police and that it was Arminen to whom the threat was directed.  We also note that the statute only requires
that a threat be made, not that it be made in the presence of the person
threatened.  Section 36.06(a)(1).   

Finally, Munoz suggests that the evidence is
insufficient to show that he knew that Arminen was a prospective witness or one
who intended to report the occurrence of a crime.  We have held that a rational jury could have
determined from the evidence that Arminen was the person who had called the
police.  We further hold that a rational
jury could have concluded that, based on such knowledge, Munoz knew that
Arminen was a prospective witness to charges that might be brought under either
the Midland noise ordinance or the State disorderly conduct statute and that he
knew that Arminen would report the occurrence of such a violation in the
future.  The threat by its nature is
designed to discourage Arminen from reporting such a future occurrence.  We overrule issues one, two, and three.  

The judgment of the trial court is affirmed.

 

PER CURIAM

 

January 13, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Wright, J., and

McCall,
J., and Hill, J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.