**Affirmed and Opinion Filed January 29, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01526-CR
## No. 05-12-01527-CR

### RORY DARNELL TAYLOR, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F-12-51510-I; F-12-51511-I**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

Rory Darnell Taylor appeals his evading arrest conviction in cause number 05-12-01526-CR and his possession with intent to deliver cocaine conviction in cause number 05-12-01527-CR. A jury convicted him of each offense and sentenced him to twenty years' confinement and a $10,000 fine in cause number 05-12-01526-CR and forty years' confinement in cause number 05-12-01527-CR. In two issues, appellant argues the trial court erred in overruling his *Batson* challenge and in overruling his objection to certain testimony. We affirm the trial court's judgments.

Because appellant does not challenge the sufficiency of the evidence to support his conviction, only a brief recitation of the facts is necessary. Dallas police officer Daniel Sullivan was on patrol at approximately 1:00 a.m. on January 22, 2012, when he stopped appellant for not

having a working license plate light. Sullivan approached and asked appellant for his license and insurance information. Sullivan smelled a strong odor of marijuana coming from the vehicle, and he called for backup. Sullivan had appellant and his female companion step out of the car, and he patted them down for weapons and had them sit on the curb. Two other officers arrived, and one of them began searching appellant's car. Sullivan noticed appellant was "very clean," but his passenger was wearing a "long, ratty t-shirt" and "very dirty jeans." Appellant and his passenger did not appear to know each other. One of the officers discovered a "good-size quantity of marijuana" and a "very large amount of crack cocaine, individually placed in baggies" in the trunk of appellant's car and said, "We need [appellant] in handcuffs. He's under arrest." At that point, appellant was "visibly shaking" and "appeared to be sweating a little bit." Sullivan attempted to put handcuffs on appellant, but appellant got up and ran away. Appellant ran approximately 100 yards before turning and coming at pursuing officers in "an aggressive manner" with "his fists balled up." Sullivan deployed his taser on appellant twice before subduing him with another officer's help and arresting him.

Appellant was charged with evading arrest and possessing cocaine in an amount of four grams or more but less than 200 grams with intent to deliver. At trial, following the State's use of its peremptory strikes, appellant raised a *Batson* challenge. Specifically, appellant argued "there were four African-Americans left on the panel that could be struck and all four were struck, and I believe that leaves no African-Americans on this panel at all." Appellant identified the four African-American jurors as numbers 13, 28, 62, and 63. The prosecutor responded that she struck "all of the jurors that rate on their questionnaire police officers fair. That would be Juror 9, 28, 37, 42, 46, 62, and 63. Juror 13 and 33 were struck for the same reason." The prosecutor explained that, "[i]n the beginning, they stated they did not agree with the law, could not follow it, and they wavered on that until they came up here – or strong on that until they

came up here." The prosecutor stated she "had the list [of peremptory challenges] mapped out right after the questionnaires were done." The trial court denied appellant's *Batson* challenge, stating its finding that race-neutral explanations were offered by the State in support of its exercise of peremptories, and nothing was discriminatory in the exercise thereof.

Among other witnesses, Julian Aguilar, a controlled-substance chemist at the Southwestern Institute of Forensic Sciences (SWIFS), testified concerning his testing of the cocaine recovered from the trunk of appellant's car. An initial "color test" indicated the material was cocaine, followed by a gas chromatography/mass spectrometry test that also identified the material as cocaine. The State introduced without objection Aguilar's report of the tests he performed. Aguilar testified his report showed he separated out "one bag containing chunky white material," and the material contained cocaine and weighed 2.69 grams total. Aguilar tested four additional ziplock bags containing cocaine in a total weight, including adulterants and dilutants, of 1.49 grams. Aguilar testified the combined weight of the cocaine was 4.1 grams, and he did not test the remaining items, which he identified as containing "chunky white material," "white powder," and "plant material." Aguilar testified there was no need for him to test the other material once he got to 4.1 grams of cocaine, "the amount of cocaine that brought it to this penalty group." However, Aguilar testified the other material was "similar" to the other material he tested: "the color [was] the same, the packaging was the same, the texture of the material looked similar to what [he] analyzed." If some of the untested material had been "markedly different," Aguilar testified, he would have separated it out and tested it separately. The trial court then entered into evidence State's Exhibit 1, the bag containing all of the cocaine, both tested and untested.

Steve Junker, an Irving police officer working in the narcotics division, testified concerning the production and marketing of cocaine and crack cocaine. Junker testified he was

familiar with the reports that SWIFS does for drug testing, and the prosecutor asked what Junker could tell from the SWIFS report and Exhibit 1, including the two bags that were tested. The first thing Junker noticed "with the cocaine" was the way it was broken down into distribution bags. Junker described the cocaine as "packaged ready for sale." Junker testified that, when SWIFS talks about "chunky white material" and its percentage of purity, that meant the cocaine had come through a distributor who added one of several available chemicals to "cut" the cocaine.

The prosecutor asked Junker to look at the multiple little bags, totaling sixty-seven bags according to the SWIFS report. The prosecutor asked what Junker believed the substance was "based on the lab report [he] looked at and comparing that to the material that was tested by SWIFS. Junker answered, "cocaine." The prosecutor asked if it "would be crack or powder" or if Junker could tell. Junker testified he could not tell because the cocaine was "falling apart" and "just wasn't cooked right." Thus, Junker testified, the substance "could be cocaine hydrochloride or could be crack cocaine." However, Junker concluded, "if somebody brings it to me, my first thoughts [sic] is it's cocaine." Appellant's counsel objected to Junker "testifying to that substance is – particularly a controlled substance, because that lab person actually said that it was not tested, that particular one." The prosecutor responded she was "asking [Junker's] expert opinion, giving his review of the lab report and the review of the evidence, what he believes it to be," and the trial court overruled appellant's objection. At the conclusion of trial, the jury convicted appellant of evading arrest and possession of cocaine with intent to deliver, and these appeals followed.

In his first issue, appellant argues the trial court erred in overruling his *Batson* challenge. A party is prohibited under the Equal Protection Clause from using peremptory challenges to exclude otherwise qualified persons from a jury solely on the basis of their race. *Batson v.*

*Kentucky*, 476 U.S. 79, 88 (1986) *see* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). A *Batson* challenge calls for a three-step process. *Ford v. State*, 1 S.W.3d 691, 693-94 (Tex. Crim. App. 1999). First, the party challenging the strike must make a prima facie case of discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson*, 476 U.S. at 93-94. Second, the burden then shifts to the proponent of the strike to make a reasonable race-neutral explanation for the strike. *Id.*; *Williams v. State*, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). As long as no discriminatory intent is inherent in the explanation given, the explanation need not be persuasive or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *Williams*, 937 S.W.2d at 485. Third, if the proponent of the strike produces a race-neutral reason for the strike, the party making the challenge shoulders the burden of proving intentional discrimination. *Purkett*, 514 U.S. at 768; *Williams*, 937 S.W.2d at 485. "At that stage, 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (quoting *Purkett*, 514 U.S. at 768). The trial court must determine whether the party making the challenge carried the burden of persuasion by proving purposeful discrimination. *Id.*; *Purkett*, 514 U.S. at 767.

In reviewing a ruling on a *Batson* challenge, we review the record in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the challenges. *Davis v. State*, 329 S.W.3d 798, 815, 817 (Tex. Crim. App. 2010). Once the opponent of the challenged strike raises a question of purposeful discrimination, if the trial court then proceeds immediately to the second step by inquiring of the proponent whether he had a non-discriminatory purpose, a reviewing court is to assume that the opponent has satisfied his step-one obligation to make a prima facie case of purposeful discrimination and

address only the second and third steps. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).

In his brief, appellant emphasizes that the prosecutor stated the four African-American jurors were struck because they rated police officers "fair." Appellant argues there is "no way in this record to interpret or understand what police officers are 'fair' means." In making this argument, appellant ignores the fact the prosecutor explained Jurors 9, 28, 37, 42, 46, 62, 63, 13, and 33 were struck "for the same reason." The prosecutor explained that, "[i]n the beginning, they stated they did not agree with the law, could not follow it, and they wavered on that until they came up here – or strong on that until they came up here." The prosecutor stated she "had the list [of peremptory challenges] mapped out right after the questionnaires were done." Thus, the record shows the prosecutor made a reasonable race-neutral explanation for striking the four African-American jurors. *See Williams*, 937 S.W.2d at 485. In response to the prosecutor's race-neutral explanation, appellant did nothing to meet his burden of proving intentional discrimination. *See Purkett*, 514 U.S. at 768; *Williams v. State*, 301 S.W.3d 675, 689 (Tex. Crim. App. 2009); *Williams*, 937 S.W.2d at 485. Accordingly, we conclude the trial court did not abuse its discretion in denying appellant's *Batson* challenge. *Purkett*, 514 U.S. at 768; *Davis*, 329 S.W.3d at 815, 817. We overrule appellant's first issue.

In his second issue, appellant argues the trial court erred in overruling his objection to Junker's testimony that the untested white substances were cocaine. However, Junker had already testified, when asked what he believed the untested substance was, that the substance was "cocaine," and "could be cocaine hydrochloride or could be crack cocaine." Appellant did not object to this testimony and permitted the prosecutor to continue questioning Junker about whether the cocaine was "crack or powder." An error, if any, in the admission of evidence is cured where the same evidence comes in without objection. *Lane v. State*, 151 S.W.3d 188, 193

(Tex. Crim. App. 2004). Accordingly, the error in admitting Junker's objected-to testimony, if any, was cured by his previous testimony that the untested material was cocaine. *See id.* We overrule appellant's second issue.

We affirm the trial court's judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121526F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RORY DARNELL TAYLOR, Appellant

No. 05-12-01526-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F12-51510-I.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 29, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

RORY DARNELL TAYLOR, Appellant

No. 05-12-01527-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1251511-I.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 29, 2014

_/David L. Bridges/_
DAVID L. BRIDGES
JUSTICE