No. 04-99-00719-CR


Ricardo RODRIGUEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 218th Judicial District, Frio County, Texas


Trial Court No. 98-10-00152-CRF


Honorable Ron Carr, Judge Presiding



Opinion by: Alma L. López, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Karen Angelini, Justice


Delivered and Filed: March 7, 2001


AFFIRMED


 A jury convicted Ricardo Rodriguez of murdering his girlfriend. The jury assessed
punishment as 60 years in prison. In this appeal, Rodriguez raises eight issues to appeal his
conviction. After considering those issues, we find no error and affirm the conviction.

Sufficiency of the Evidence

 In his fourth issue, Rodriguez complains that the trial court erred by denying his motion for
a directed verdict. In his eighth issue, Rodriguez argues that the evidence is factually insufficient to
support the jury's verdict. Because the court of appeals reviews a complaint about the denial of a
motion for directed verdict as a challenge to the legal sufficiency of the evidence, Williams v. State,
937 S.W.2d 479, 482 (Tex. Crim. App. 1996), these issues are logically discussed together.

 To review a challenge about the legal sufficiency of the evidence, the court of appeals reviews
the evidence in the light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Mosley v. State, 983 S.W.2d 249, 254-255 (Tex. Crim. App.
1998), cert. denied, 119 S.Ct. 1466 (1999). In conducting this review, the jury serves as the
exclusive judge of the credibility of witnesses and of the weight to be given their testimony; and
therefore, reconciliation of conflicts in the evidence is within the exclusive province of the jury.
Mosley, 983 S.W.2d at 254-255. To review the factual sufficiency of the evidence, the reviewing
court reviews all evidence without the prism of "in the light most favorable to the prosecution" and
sets aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly
wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

 Rodriguez was charged with intentionally or knowingly causing the death of Irma Garza by
shooting her with a firearm. To prove this allegation, the State relied on the testimonies of nineteen
witnesses, photographs of the crime scene, bullets recovered from the scene and from Irma's body,
and an autopsy report. At trial, Rodriguez maintained that he was only one of two shooters and that
Irma got caught in cross-fire. Despite this theory, the evidence indicated only one shooter.

 Two of Irma's children testified that on the day Irma was killed, Rodriguez was angry because
Irma planned to attend a wedding at her sister's house. The son testified that after Irma left for the
wedding, Rodriguez was angry and that he left the family home to get Irma. The son stated that he
knew Rodriguez had been drinking because of the numerous beer bottles left in the house.

 Irma's nephew, Albert Hernandez, testified that he observed Rodriguez talking with Irma after
the party that followed the wedding. Albert stated that he saw Rodriguez shoot Irma in the face and
Irma fall to the ground. Albert explained that he then saw Rodriguez shoot Irma four additional
times. Albert described how he ran to Rodriguez after the first shot, observing Rodriguez with a gun
in his hand, and how he struggled with and knocked Rodriguez to the ground. Although Albert
admitted that all of these events occurred in the dark, he was unequivocal in his testimony that
Rodriguez shot Irma multiple times. Albert stated that he did not find the gun. 

 Irma's niece, Hilda Gonzalez, testified that she also observed Rodriguez talking with Irma.
Hilda described Rodriguez as mad and screaming at Irma. Hilda stated that she observed Rodriguez
push Irma, and that as she (Hilda) moved a few feet away, she heard a gunshot. Hilda stated that she
turned and saw "sparkles" and heard four more gun shots.

 Irma's sister, Elsa Martinez, testified that Rodriguez arrived at her house after the party. Elsa
stated that she first saw Rodriguez when she heard gunshots. She testified that she ran to see what
was happening and observed Rodriguez with a gun in his hand. Elsa explained that she jumped on
Rodriguez's back and that then others began to jump on him. Elsa further testified that she did not
see what happened to the gun. Elsa acknowledged that it was dark when these events occurred, but
she stated that there was enough light to see. When questioned about whether she actually saw
Rodriguez fire a gun, she replied that she observed sparkles coming from his direction.

 Deputy Chris Westbrook of the Frio County Sheriff Department testified that he was
dispatched to the scene of the shooting. Westbrook explained that he first encountered Albert,
describing Albert as hysterical. Westbrook stated that Albert told him Rodriguez shot his aunt.
Westbrook stated that he observed Irma lying on the ground in a pool of blood, and Rodriguez lying
on the ground, moaning as if in pain. Westbrook described Rodriguez as battered about the face and
head. Westbrook testified he checked Albert for a firearm, but did not find one. Westbrook
explained that although he did not find a firearm in the area, he recovered bullets from the ground
near Rodriguez.

 Another deputy who was dispatched that night, Rodney Lucio, testified that he accompanied
Rodriguez in an ambulance to the hospital. He explained that when medical personnel removed
Rodriguez's shirt, he placed the shirt in a paper bag. James Garcia from the Bexar County Forensic
Science Center Criminal Investigation Laboratory testified that he examined the shirt. Garcia
explained that the sleeves of the shirt were either in direct contact with a discharged firearm or were
in close proximity to a discharged firearm.

 Dr. Robert Bux, a medical examiner for Bexar County, performed an autopsy on Irma. Dr.
Bux explained that Irma sustained six gunshots wounds. Dr. Bux testified that Irma received one
wound to the left side of her face and opined that the gun was fired from no more than two inches
from her face. He explained that Irma received another gunshot to her jaw, one to her armpit, one
to the left shoulder, and two more to her left arm. Dr. Bux stated that he could not determine if the
wounds were inflicted by the same shooter and that he did not know from how far away the other
shots were fired. Dr. Bux reported that Irma died from multiple gun shot wounds.

 Ron Crumley, a firearms and toolmark examiner for the Department of Public Safety, testified
about live rounds and spent casings recovered from the scene and from Irma's body. Crumley
identified each item as capable of being fired from a .38 caliber firearm or a .357 magnum firearm,
but testified that he did not know if all items came from the same gun. Crumley stated that the
recovered items could have been fired by more than one gun. The State tied the use of a .38 caliber
weapon to Rodriguez using Chris Statzenberger's testimony. Statzenberger testified that sometime
prior to Irma's death, he sold Rodriguez a .38 caliber pistol.

 Viewing this evidence in the light most favorable to the jury, a rational jury could have found
all the elements of the charged offense beyond a reasonable doubt. Jackson, 443 U.S. at 319. 
Although Rodriguez does not state why he believes the evidence was legally insufficient, his trial
attorney moved for an instructed verdict on the grounds that the testimony of the State's three eye
witnesses contradicted the testimony of the State's scientific experts, ostensibly because Albert and
Hilda testified that they heard five gunshots, but Dr. Bux indicated Irma sustained six gunshot
wounds. The State's expert witnesses were unable to determine whether the gunshots that caused
Irma's death were discharged from the same weapon or from more than one weapon, but their
testimony nonetheless supports the verdict by establishing the cause of Irma's death and establishing
the type of weapon that inflicted Irma's wounds. Although Rodriguez theorized that more than one
shooter existed, the evidence identified only one shooter-Rodriguez. As a result, the evidence is
legally sufficient. The trial judge does not err in denying a motion for a directed verdict where the
evidence is legally sufficient. Williams, 937 S.W.2d at 483.

 Even viewed without the prism of "in the light most favorable to the prosecution," the
overwhelming weight of this evidence supports the jury's verdict. Using cross-examination,
Rodriguez demonstrated that the eye-witnesses' observations occurred on a very dark night, but the
witnesses were unequivocal in describing what they observed. Although the disappearance of the
murder weapon is unexplained, two witnesses stated that they observed Rodriguez with a gun in his
hand. While Dr. Bux could not say that all of Irma's wounds were inflicted by the same shooter, and
Garcia did not know whether all of the recovered bullets came from more than one gun, no one
identified another shooter. Under these circumstances, the verdict is not so contrary to the over-whelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 129. As
a result, the evidence is factually sufficient to support the jury's verdict. We overrule Rodriguez's
fourth and eighth issues.

Display of a Pistol

 The weapon that discharged the bullets that caused Irma's death was not recovered.
Nonetheless, the prosecutor sought permission to display a .38 pistol to the jury. Rodriguez objected
to the demonstration on the basis of both relevancy and prejudicial value. The trial judge, however,
permitted the prosecutor to display the gun to the jury and to use it in examining the State's
witnesses. In his first two issues, Rodriguez complains that the trial court abused its discretion by
allowing the prosecutor to exhibit the gun to the jury.

 The court of criminal appeals determined long ago that a like weapon used in the commission
of an offense is "admissible if it is relevant and material to an issue in the trial and is not overly
inflammatory." Simmons v. State, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). Whether the trial
court erred in admitting a similar-type weapon is reviewed under an abuse of discretion standard.
Simmons, 622 S.W.2d at 113. In the instant case, a weapon was relevant to the offense of murder
because the State alleged that Rodriguez caused Irma's death by "shooting her with a firearm". While
the actual weapon was never recovered, the State theorized that Rodriguez shot Irma with a .38
caliber pistol. The State presented evidence that Irma's death was caused by shots discharged by a
.38 caliber or a .357 magnum firearm, and that Rodriguez purchased a .38 caliber pistol. The exhibit
gun itself had no inflammatory attributes, and was presented as a similar-type weapon. Id. In
addition, several State's witnesses testified that the actual murder weapon was never recovered.
Under these circumstances, the display of the .38 caliber pistol was not an abuse of discretion because
it merely permitted the jury to see a weapon similar to the type of weapon the State maintained
caused Irma's death. We overrule this issue.

Testimony of the DPS Officer

 In his third issue, Rodriguez contends that the testimony of State's witness, Andy Lopez,
should have been excluded. Lopez, a Texas Ranger with the Department of Public Safety, testified
about his investigation into what happened to the murder weapon. Lopez testified that he questioned
three men, one who attended the wedding party, about the gun and concluded that none of the men
had the gun. Rodriguez maintains that Lopez's testimony was irrelevant and highly prejudicial.

 To be admissible, evidence must be relevant to a contested issue. Johnson v. State, 698
S.W.2d 154, 160 (Tex. Crim. App. 1985). "The determination of whether evidence is relevant to any
issue in the case lies within the sound discretion of the trial court and will not be disturbed absent a
clear abuse of that discretion." Id. While relevance of Lopez's testimony is somewhat attenuated
from the elements of the offense of murder, the disappearance of the murder weapon was a contested
issue. Rodriguez used the disappearance of the murder weapon in his defense. During his opening
statement, Rodriguez suggested that someone in Irma's family took the firearm to cover up what
actually occurred. Thus, efforts by law enforcement personnel to recover the weapon were relevant
to address this theory. Under these circumstances, the admission of Lopez's testimony was not an
abuse of discretion. We overrule this issue.


Instructions for Lesser Included Offenses

 Prior to submitting the case to the jury, Rodriguez asked for jury instructions on the lesser
included offenses of manslaughter and aggravated assault. Rodriguez complains in his fifth issue that
the trial judge erred by failing to instruct the jury on these offenses. Rodriguez asserts that the
evidence supported the requested instructions.

 The court of appeals uses a two-part test to determine whether a jury charge must include an
instruction on a lesser included offense: First, the lesser included offense must be included within the
proof necessary to establish the offense charged. Second, some evidence must exist in the record that
would permit the jury rationally to find that if the defendant is guilty, he is guilty of only the lesser
offense, and not of the greater offense. See Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim.
App. 1993).

 A person commits the offense of manslaughter if he recklessly causes the death of an
individual. Tex. Pen. Code Ann. §19.04 (Vernon 1994). Thus, evidence must exist that Rodriguez
acted recklessly to entitle him to an instruction on manslaughter. "A person acts recklessly, or is
reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he
is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist
or the result will occur." Id. § 6.03(c). Although Rodriguez testified during the punishment phase
of trial that Irma got caught in his cross-fire after Albert first fired at him, no evidence during the
guilt-innocence phase indicated that Rodriguez was aware of, but consciously disregarded, the
substantial and unjustifiable risk that firing a weapon in Irma's direction might result in her death.
Without evidence of recklessness, Rodriguez was not entitled to an instruction on manslaughter.
Rousseau, 855 S.W.2d at 673.

 A person commits the offense of aggravated assault if he commits an assault, and uses or
exhibits a deadly weapon during the commission of the assault. Tex. Pen. Code Ann. § 22.02
(Vernon 1994). A person commits an assault if he intentionally, knowingly, or recklessly causes
bodily injury to another, or if he intentionally or knowingly threatens another with imminent bodily
injury. Id. § 22.01 (a). Thus, assault is distinguished from murder by "bodily injury" rather than
"death." "Aggravated assault can be a lesser included offense of murder." Sledge v. State, 860
S.W.2d 710, 713 (Tex. App.--Dallas 1993, pet. ref'd). Here, aggravated assault is included within
the proof necessary to establish the offense of murder. Nonetheless, to entitle Rodriguez to an
instruction on aggravated assault, some evidence must exist that would permit the jury rationally to
find that Rodriguez intended only to cause Irma bodily injury, rather than death. See Rousseau, 855
S.W.2d at 673. No evidence indicates that Rodriguez intended to cause Irma bodily injury. Without
such evidence, Rodriguez was not entitled to an instruction on aggravated assault. Id. Because
Rodriguez was not entitled to instructions on manslaughter or aggravated assault, we overrule this
issue.

Closing Argument

 In his sixth issue, Rodriguez contends that the State shifted the burden of proof to him during
closing argument. Rodriguez complains about the following comment by the prosecutor: "Nobody
came in here and said, oh, yeah, I saw somebody else do some shooting, you know, I did. I tell you
why not . . . .You have absolutely no evidence that indicates anybody else did the shooting, and you
have all the evidence from that witness stand saying this guy did it." Rodriguez, however, did not
object to this argument at trial, and as a result, he waived this complaint. Tex. R. App. P. 33.1(a)
(requiring an objection at trial to preserve an issue for appellate review); see Stoker v. State, 788
S.W.2d 1, 14 (Tex. Crim. App. 1989) (instructing reviewing court to consider whether defendant
objected to the prosecutor's conduct at trial). Even if Rodriguez had objected, summarizing the
evidence does not constitute prosecutorial misconduct. Allridge v. State, 762 S.W.2d 146, 155 (Tex.
Crim. App. 1988) (summation of the evidence constitutes proper jury argument). We overrule this
issue.

Punishment Evidence

 Rodriguez complains in his seventh issue that the trial judge committed fundamental error by
allowing the State to introduce uncharged misconduct during punishment. Rodriguez specifically
complains about testimony by Irma's brother that Rodriguez told him he tried to stab Irma after using
cocaine. Rodriguez, however, did not object to this testimony, and thus, waived this complaint.
Even if he had objected, the Code of Criminal Procedure provides for this type of evidence during
the punishment phase of trial. See Tex. Code. Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.
2000). We overrule this issue.

Conclusion

 Having overruled each of Rodriguez's issues, we affirm the trial court's judgment.


 Alma L. López, Justice

DO NOT PUBLISH