Opinion filed November 1, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 1,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00358-CR 

                                                    __________

 

                                  CATHERINE MARSTON, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 331st District Court

                                                          Travis
County, Texas

                                      Trial
Court Cause No. D-1-DC-2005-300053

 



 

                                                                   O
P I N I O N

 

Catherine
Marston was charged by indictment with one count of burglary of a habitation
and one count of violation of a protective order.  The jury convicted her of
both offenses and assessed punishment at confinement for ten years on each
count.  We affirm.  

                                                                 Issues
on Appeal








Appellant
has briefed eleven issues for appellate review.  In the first three issues, she
challenges the sufficiency of the evidence in support of her conviction for
violating a protective order.  Appellant specifically contends that the
evidence is legally and factually insufficient and that a directed verdict
should have been granted because the evidence failed to show that her acts were
committed in furtherance of stalking.  In the next three issues, appellant
challenges the sufficiency of the evidence with respect to the burglary
offense.  She specifically contends that the evidence is legally and factually
insufficient and that a directed verdict should have been granted because the
evidence failed to show that she possessed the requisite intent to commit
stalking when she entered the habitation.  In her seventh issue, appellant complains
that the jury charge enabled a verdict that was less than unanimous.  In her
eighth issue, appellant asserts that trial counsel was ineffective for failing
to object to the jury charge.  In the ninth issue, appellant complains that the
trial court refused to give a charge on the lesser-included offense of criminal
trespass.  In the tenth issue, appellant asserts that the trial court erred in
allowing expert testimony on the legal interpretation of what constitutes Afollowing@ as used in the stalking
statute.  In her final issue, appellant complains of the trial court=s refusal to redact the
underlying protective order before admitting it into evidence.  

                                                        Sufficiency
of the Evidence

Standards
of Review

In
order to determine if the evidence is legally sufficient and whether the trial
court erred in denying appellant=s
motion for directed verdict, we must review all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State,
17 S.W.3d 664 (Tex. Crim. App. 2000); Williams v. State, 937 S.W.2d 479,
482 (Tex. Crim. App. 1996).  To determine if the evidence is factually
sufficient, we must review all of the evidence in a neutral light.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, we must determine whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson, 204 S.W.3d at
414-15;  Johnson, 23 S.W.3d at 10-11.  We must also give due deference
to the jury=s
determinations of fact, particularly those determinations concerning the weight
and credibility of the evidence.  Johnson, 23 S.W.3d at 8-9. 

Evidence
Presented








The
record in this case shows that appellant and the complainant, Tom Labinski,
dated and then lived together from June 2000 to November 2001.  Labinski
obtained a restraining order against appellant in July 2004, effective until
July 2006.  The restraining order forbade appellant from coming within 200
yards of Labinski=s
house, from calling him at home or work, and from contacting Labinski=s family members.  

Appellant
telephoned Labinski=s
home several times during the early morning hours on October 13, 2004.  She
also called and left messages on his voicemail at work on December 7, 2004, and
on December 8, 2004.  In one voicemail, appellant stated that Labinski was
going to jail for a long time.  In another, appellant used a pseudo Spanish
accent and called Labinski a liar and a batterer or murderer.

Appellant
also went to Labinski=s
house on the afternoon of December 8, 2004.  Labinski testified that he was
home that afternoon and heard the doorbell ring.  He did not see anybody at the
door, but he saw a cab parked out front.  The cab left.  About thirty minutes
later, the doorbell rang again.  Again, Labinski saw a cab parked out front, so
he went into his garage to get a better look but still could not see anyone out
front.  Labinski then heard scraping noises and saw a crowbar being used to pry
open a screen.  Labinski quickly pulled up the blinds and saw a dark slender
man standing outside.  The man jumped back startled and said, A[W]hoa, somebody is in
there.@  Then Labinski
looked over and saw appellant standing to the man=s
left.  Appellant turned and ran, and the man followed her.  They got into the
cab and sped off.  Labinski called 911 and took a picture of the cab leaving. 
A dark green pickup pulled up right after the cab left, and somebody rang the
doorbell again.  Labinski testified that he was Avery
frightened@ during
this incident.

A
few days later, on the afternoon of December 13, 2004, Labinski=s neighbor, Ruth Godine,
noticed two Pop-A-Lock trucks parked at Labinski=s
house.  Thinking this was strange because Labinski had been home earlier that
day, Godine walked over to check on things.  She saw appellant standing near
the front door with a Pop-A-Lock employee and asked appellant if she was
supposed to be there.  Appellant said she was.  Godine knew that appellant and
Labinski had had problems, so Godine went around the corner to seek help from
another neighbor, Jamie Baird.  Baird and Labinski were friends and had been
house mates.  Godine also called 911.








Baird,
who had a key to Labinski=s
house, ran across to Labinski=s
and went inside.  Baird was aware of the protective order and knew that
appellant was not supposed to be at Labinski=s
house.  When he went inside, Baird noticed appellant=s dog in the living room and eventually found
appellant hiding in a closet.  Baird ordered appellant to leave.  She went into
the living room, got her backpack, and headed outside.  Baird testified that he
knew about appellant=s
history of confrontations, so he waited until she was outside and then he
caught up to her and Atook
her to the ground.@ 
Baird held appellant down until the police arrived.

When
Officer Joseph M. Hernandez arrived at Labinski=s
residence, he saw Baird holding appellant down and trying to restrain her. 
Officer Hernandez placed appellant in handcuffs.  He testified that appellant
was irate and that some of her answers to simple questions made no sense. 
Appellant also gave a false name.  Officer Hernandez found a box containing
handcuffs in appellant=s
backpack, but the handcuff keys were not in the box.  Because he was concerned
that appellant had a key that she could use to unlock the handcuffs that had
been placed on her, Officer Hernandez requested that a female officer frisk
appellant.  The handcuff keys were found in appellant=s pocket.

A
Pop-A-Lock  employee confirmed that he had been called to Labinski=s residence and that he and
another Pop-A-Lock employee were met there by appellant, who came walking up
with a dog. Appellant showed them her driver=s
license, which indicated that she lived at that address.  They opened the front
door for her.  One of the Pop-A-Lock employees testified that he drove a green
pickup, that he had been called to that address on a previous day, and that a
cab left as he was pulling up to the residence.

Stalking
as Element of Offenses








Both
offenses in this case involve the offense of stalking.[1] 
In her sufficiency issues, appellant challenges the element involving
stalking.  Appellant was charged with and convicted of burglary of a habitation
with the Aintent to
commit stalking.@ 
Appellant was also charged with and convicted of violating the protective order
by committing acts in furtherance of the offense of stalking.  See Tex. Penal Code Ann. ' 25.07 (Vernon Supp.
2006).  The alleged acts in furtherance of stalking included the October 13
phone calls, the December 7 phone call, the December 8 phone call, and the
December 8 attempt to enter the house.

With
respect to the burglary offense, a completed offense of stalking need not have
been proved.  All that was required was that appellant entered the habitation
with the intent to commit the offense of stalking.  The evidence of appellant=s repeated phone calls despite
the protective order,  the content of those calls, and her previous attempt to
break into Labinski=s
home are sufficient to show that appellant entered Labinski=s home with the intent to
commit stalking.  We hold, therefore, that the evidence is both legally and
factually sufficient to support appellant=s
conviction for burglary of a habitation.  The fourth, fifth, and sixth issues
are overruled.  

With
respect to appellant=s
conviction for violating a protective order, we note that appellant was charged
pursuant to Section 25.07(a) with committing acts Ain furtherance of@ the offense of stalking.  The offense of
violation of a protective order is a Class A misdemeanor unless the State shows
that the defendant has previously been convicted two or more times for
violating a protective order or that the defendant Aviolated the protective order by committing an
assault or the offense of stalking@
B in which case the
offense is a felony of the third degree.  Section 25.07(g).  The jury in this
case was instructed to find appellant guilty of the felony offense of violation
of a protective order if it found that appellant Adid
commit any two or more of the following offenses [four separate stalking
allegations relating to the October 13 phone calls, the December 7 phone call,
the December 8 phone call, and the December 8 attempt to enter the house] as
alleged in Count II.@ 
The jury=s verdict and
the judgment show that appellant was convicted of the third-degree felony of
violation of a protective order.  Thus, to uphold appellant=s felony conviction for
violating the protective order, we must determine whether the evidence is
sufficient to show that appellant committed the offense of stalking, not just
acts Ain furtherance
of@ stalking as argued
by the State. 








The
record in this case shows that, in violation of a protective order, appellant
telephoned Labinski=s
home and office as alleged and that she attempted to gain entry into his home
as alleged.  There was also evidence showing that appellant=s December 7 phone call
made Labinski Afearful,@ that Labinski was Aafraid@ after receiving the phone
call from appellant on December 8, and that he was Avery frightened@
during the incident in which appellant tried to break into his house. 
Appellant=s knowledge
that Labinski would regard her actions as threatening bodily injury or death
can be inferred from the history of confrontations alluded to by Baird and from
the existence of a protective order that was issued because Labinski had been
the victim of family violence committed by appellant and because appellant
posed a threat to the physical safety of Labinski.  Furthermore, the
circumstances as shown by the evidence are sufficient to show that a reasonable
person under these circumstances would have feared bodily injury or death. 
Consequently, we hold that the evidence is both legally and factually sufficient
to support appellant=s
conviction for the felony offense of violating a protective order.  Appellant=s first, second, and third
issues are overruled.  

                                                   Jury
Charge B
Unanimous Verdict 

In
her seventh issue, appellant contends that the jury charge enabled a verdict
that was less than unanimous with respect to the offense of violation of a
protective order.  The trial court instructed the jury to find appellant guilty
of the felony offense of violation of a protective order if it found that
appellant Adid commit
any two or more of the following offenses as alleged in Count II.@  The Afollowing offenses@ were set out in the next
four paragraphs of the jury charge; each paragraph required the jury to find
that appellant violated the terms of the protective order by:

[I]ntentionally
or knowingly committing acts in furtherance of an offense of Stalking [as
previously defined in the charge] under Section 42.072 against Tom Labinski,
to-wit: did then and there intentionally and knowingly engage in conduct
directed specifically toward Tom Labinski that the defendant knew or reasonably
believed Tom Labinski would regard as threatening bodily injury or death to Tom
Labinski, to-wit: by . . . [conduct including telephoning or attempting to gain
entry], and said conduct would cause a reasonable person to fear and did cause
Tom Labinski to fear bodily injury or death. 

The conduct in
the first paragraph was telephoning Labinski=s
residence on October 13, 2004.  In the second and third paragraphs, the conduct
was telephoning Labinski=s
work place on December 7 and December 8, 2004, respectively.  In the fourth
paragraph, the conduct was attempting to gain entry to Labinski=s residence on December 8,
2004.  Appellant asserts that, because the jurors may not have agreed on which
two of the four Aoffenses@ appellant committed, the
verdict may not have been unanimous.  








A
jury verdict in a felony case is required to be unanimous under both the
constitution and statutory law of Texas.  Tex.
Const. art. V, '
13; Tex. Code Crim. Proc. Ann.
art. 36.29(a) (Vernon 2006); Jefferson v. State, 189 S.W.3d 305 (Tex.
Crim. App.), cert. denied, 127 S.Ct. 386 (2006); Ngo v. State,
175 S.W.3d 738, 745 (Tex. Crim. App. 2005).  A unanimous jury verdict Aensures that the jury agrees
on the factual elements underlying an offense,@
which requires Amore
than mere agreement on a violation of a statute.@ 
Francis v. State, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000).  The jury
must unanimously agree on the essential elements of the offense but not
necessarily on the alternate modes or means of committing that offense.  See
Jefferson, 189 S.W.3d at 311.  A trial court may submit a disjunctive jury
charge and obtain a general verdict where the alternate theories involve the
commission of the Asame
offense.@  Francis,
36 S.W.3d at 124; Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim.
App. 1991).  However, because of the possibility of a non-unanimous jury
verdict, Aseparate
offenses@ may not be
submitted to the jury in the disjunctive without an instruction requiring
unanimity for each of the separate offenses.  Ngo, 175 S.W.3d at 749; Francis,
36 S.W.3d at 124-25.  Thus, we must determine whether the jury charge in this
case merely charged alternate theories of committing the same offense or
whether the jury charge included separate offenses charged disjunctively
without a unanimity requirement.  

Adhering
to the reasoning of the court in Jefferson and the decision in Kitchens,
we hold that the particular conduct in this case was not an essential element
of the offense about which the jury must have unanimously agreed.  In Jefferson,
the jury charge allowed a conviction for injury to a child if the jurors found
that the defendant struck the victim with his foot, caused the victim=s head to strike an unknown
object, failed to intercede or stop the physical abuse of the victim by her
mother, Aor@ failed to provide proper
medical care for the victim. 189 S.W.3d at 309.  The jury charge did not
require that the jurors unanimously agree upon which act or omission was
committed by the defendant.  The Jefferson court determined that the
jury was not required to unanimously agree on what act or omission the
defendant committed because the particular act or omission was not a separate
criminal offense but, rather, a means of committing the conduct element of the
offense of injury to a child.  Id. at 312-13.  








In
Kitchens, the court held that alternate theories of committing the same
offense may be charged in the disjunctive without requiring the jury to agree
unanimously.  823 S.W.2d at 257-58.  The court in Kitchens upheld a
single application paragraph that allowed the jury to convict the defendant of
capital murder even though some jurors may have found that the murder was
committed in the course of sexual assault while others may have found that the
murder was committed in the course of robbery.  Id.  

The
particular conduct or acts committed in this case, whether phone calls on
various dates or an attempt to enter Labinski=s
residence, were merely alternate means of committing the conduct element of the
offense; they were not separate criminal offenses.  Thus, the jury charge in
this case was not erroneous.  Cf. Ngo, 175 S.W.3d 738 (finding error
where separate criminal acts of credit card abuse were submitted disjunctively
without requiring unanimous agreement as to which criminal act was committed). 
Appellant=s seventh
issue is overruled.  

                                                     Effective
Assistance of Counsel

In
her eighth issue, appellant contends that trial counsel was ineffective for
failing to object that the jury charge did not require a unanimous verdict as
to the violation of a protective order.  In order to determine whether
appellant=s trial
counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999); Hernandez v. State,
726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  As discussed above, the jury charge
was not erroneous; therefore, trial counsel=s
failure to object was not unreasonable.  We hold that appellant has not shown
that trial counsel=s
representation fell below an objective standard of reasonableness or that the
result would have been different if trial counsel had objected to the jury
charge.  Appellant=s
eighth issue is overruled.  

                                                           Lesser
Included Offense








In
her ninth issue, appellant contends that the trial court erred in refusing to
include in the jury charge the lesser included offense of criminal trespass. 
Appellant requested that a charge of criminal trespass of a habitation be given
as a lesser included offense of burglary of a habitation.  A charge on a lesser
included offense is required if (1) the statutory elements of the lesser
included offense are included within the proof necessary to establish the
offense as charged in the indictment and (2) there is some evidence that would
permit a rational jury to find that, if the accused is guilty, he is guilty of
only the lesser offense.  Hall v. State, 225 S.W.3d 524 (Tex. Crim. App.
2007); Rousseau v. State, 855 S.W.2d 666 (Tex. Crim. App. 1993); Royster
v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  An offense is a
lesser included offense if:  (1) it is established by proof of the same or less
than all the facts required to establish the commission of the charged offense;
(2) it differs from the offense charged only with respect to the seriousness of
the injury or risk of injury; (3) it differs from the offense charged only with
respect to the culpable mental state; or (4) it consists of an attempt to
commit the offense charged or an otherwise included offense.  Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 2006).  

When
a person has notice that entry is forbidden and enters another=s building or habitation
without effective consent, the person commits the offense of criminal
trespass.  See Tex. Penal Code
Ann. '
30.05(a), (d) (Vernon Supp. 2006).  When a person enters another=s building or habitation
without effective consent but with the intent to commit (or attempts to commit)
a felony, theft, or an assault, the person commits the offense of burglary.  See
Tex. Penal Code Ann. ' 30.02 (Vernon 2003). 
Because criminal trespass is a lesser included offense of burglary, the first
prong of the Royster test is satisfied.  Mitchell v. State, 807
S.W.2d 740, 741-42 (Tex. Crim. App. 1991) (reversing burglary conviction where
trial court failed to charge jury on the lesser included offense of criminal
trespass).  

Next,
we must consider the second prong:  i.e., whether there was some evidence that
would have permitted a rational jury to find that, if appellant was guilty, she
was guilty of criminal trespass only.  Appellant did not testify or call any
witnesses to testify at the guilt/innocence phase of trial.  On
cross-examination, Baird testified that, at one point during the struggle
outside, appellant went from being combative and violent to limp and, as if
talking to somebody else, said she Ajust
came to get some Grateful Dead CDs from [Labinski].@  We can find no evidence in the record
indicating that appellant was guilty of criminal trespass only.  The only
evidence regarding appellant=s
intent was that she entered the house with the intent to commit stalking or
theft.  Either of these culpable mental states converts a criminal trespass
into a burglary under the provisions of Section 30.02.  Because there was no
evidence that appellant was guilty of criminal trespass only, the second prong
of the Royster test was not met.  Consequently, we hold that the trial
court did not err in refusing to instruct the jury on criminal trespass. 
Appellant=s ninth
issue is overruled.  

 








                                                   Expert
Testimony on AFollowing@

In
her tenth issue, appellant argues that the trial court erred in overruling her
objection to expert testimony regarding the legal interpretation of the term Afollowing@ as an element of
stalking.  The record shows that Sergeant Richard A. Shirley was called as an
expert on the topic of stalking.  Sergeant Shirley testified that stalking is a
complicated offense and explained the elements of stalking and the four basic
types of stalking.  The prosecutor then asked Sergeant Shirley, who had already
testified without objection that Acourt
cases@ had upheld the
constitutionality of the current stalking statute, to Adescribe for us the different ways in Texas
that a person may be followed.@ 
Sergeant Shirley answered:  AWell,
there have been court cases that have held that simply going to a person=s residence or place of
business knowing that that person will be there is perceived as following in
the eyes of some of the court cases that I have read.@  After the answer, defense counsel asked to
approach the bench and then objected that the testimony regarding court cases
was inappropriate, was being promoted as the law in Texas, and lent too much
credibility to the witness.  The trial court overruled the objection, and the
prosecutor passed the witness.  

The
State contends that appellant failed to preserve her objection for review by
failing to timely object.  We agree.  Appellant did not object until after the
question was asked and the answer completed.  To preserve error, an objection
must be timely and should be made as soon as the ground for objection becomes
apparent.  Tex. R. App. P.
33.1(a); Lagrone v. State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). 
When a defendant does not object until after an objectionable question has been
asked and answered, the objection is not timely unless the defendant has a
legitimate reason to justify the delay.  Lagrone, 942 S.W.2d at 618.  No
justification has been shown in this case.  Therefore, we hold that appellant
failed to preserve the issue for review.  The tenth issue is overruled. 

                                                      Redaction
of Protective Order








In
her final issue, appellant contends that the trial court erred in refusing to
redact the underlying protective order before admitting it into evidence.  The
protective order contained findings that family violence had taken place in the
past and was likely to recur in the future.  At trial, appellant objected that
these findings were not relevant and constituted an impermissible comment on
the weight of the evidence.[2]  On appeal,
appellant contends only that the findings were irrelevant to the case at bar
and did not constitute harmless error.  

The
admissibility of evidence is within the sound discretion of the trial court and
will not be disturbed absent an abuse of discretion.  Sorto v. State,
173 S.W.3d 469, 491 (Tex. Crim. App. 2005).  Appellant was charged with
violating a protective order.  The protective order that she allegedly violated
was, therefore, relevant.  It showed that a valid protective order had been
issued against appellant and that she had knowledge of its existence.  See
Section 25.07.  Pursuant to the Family Code, a court issuing a protective order
like the one in this case is required to find whether family violence has
occurred and whether family violence is likely to occur in the future.  Tex. Fam. Code Ann. ' 85.001 (Vernon 2002).  

We
cannot hold that these findings of family violence were irrelevant or that the
trial court abused its discretion in failing to redact the protective order. 
Relevant evidence is Aevidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.@ 
Tex. R. Evid. 401.  The issuing
court=s findings were
relevant to a determination of appellant=s
intent in violating the protective order, Labinski=s fear of bodily injury or death, and a
reasonable person=s
fear of bodily injury or death.  Appellant=s
eleventh issue is overruled.  

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.  

 

PER CURIAM

 

November 1, 2007

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]Tex. Penal Code Ann. ' 42.072(a) (Vernon 2003) provides that a person commits
the offense of stalking if: 

 

[T]he person, on more than one occasion and pursuant to
the same scheme or course of conduct that is directed specifically at another
person, knowingly engages in conduct, including following the other person,
that:

 

(1) the actor knows or reasonably believes the other
person will regard as threatening:

 

(A) bodily injury or death for the other person;

 

(B) bodily injury or death for a member of the other
person=s family or household; or

 

(C) that an offense will be committed against the other
person=s property;

 

(2) causes the other person or a member of the other
person=s family or household to be placed in fear of bodily
injury or death or fear that an offense will be committed against the other
person=s property; and

 

(3) would cause a reasonable person to fear:

 

(A) bodily injury or death for himself or herself;

 

(B) bodily injury or death for a member of the person=s family or household; or

 

(C) that an offense will be committed against the person=s property.  





[2]We note that appellant did not object on the basis that
the findings contained an extraneous offense or were unfairly prejudicial.  See
Tex. R. Evid. 403, 404(b); Medina
v. State, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999) (relevancy objection
does not preserve extraneous-offense objection).  We also note that appellant
did not offer to make any stipulations with respect to the protective order.  See
Tamez v. State, 11 S.W.3d 198 (Tex. Crim. App. 2000) (State cannot refuse
defendant=s offer to stipulate to prior DWI convictions necessary
to prove a felony DWI).