Opinion filed March 20, 2008 











 
 
  
 
 







 
 
  
 
 




Opinion filed March 20,
2008 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00286-CR

                        __________

 

                                CALVIN EMMANUEL LEE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 7360-D

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Calvin Emmanuel Lee of delivery of cocaine.  The trial court
assessed his punishment at confinement for twelve years.  We affirm.

                                                                 Issues
on Appeal








In
four issues, appellant challenges the sufficiency of the evidence to support
his conviction.  In his first issue, appellant argues that the evidence is both
legally and factually insufficient to support the jury=s finding that he intentionally and knowingly
actually transferred the cocaine.  In his second issue, appellant contends that
the evidence was insufficient to prove actual transfer.  In the third issue,
appellant argues that the trial court erred in failing to grant his motion for
an instructed verdict.  This is a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App.
1996).  Finally, appellant argues that the trial court erred in refusing to
grant his motion for new trial on the grounds that the verdict was contrary to
the law and the evidence and that the evidence
was insufficient to support the conviction.  We will consider these
issues together.

                                                              Standards
of Review

In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex.
Crim. App. 2000).  To determine if the evidence is factually sufficient, the
appellate court reviews all of the evidence in a neutral light.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the reviewing court determines whether the
evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson, 204 S.W.3d at
414-15; Johnson, 23 S.W.3d at 10-11.

We
review the factfinder=s
weighing of the evidence and cannot substitute our judgment for that of the
factfinder.  Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d at 133. 
Due deference must be given to the factfinder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson, 23 S.W.3d at 10-11; Jones v. State, 944
S.W.2d 642 (Tex. Crim. App. 1996).  The jury, as the finder of fact, is the
sole judge of the weight and credibility of the witnesses= testimony.  Tex. Code
Crim. Proc. Ann. art.
36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  This court has the authority to
disagree with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the occurrence
of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.








The
trial court=s denial
of a motion for new trial will not be disturbed on appeal unless, after being
reviewed in the light most favorable to the trial court=s ruling, the record reflects that the trial
court abused its discretion.  Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004).

                                            The
Indictment and the Charge to the Jury

The
indictment alleged that on September 14, 2004, appellant Adid then and there
knowingly deliver by actual transfer to James Rhodes, a controlled substance,
to-wit: COCAINE, in an amount by aggregate weight, of four (4) grams or more
but less than two hundred (200) grams.@ 
The charge to the jury included instructions on the law of parties pursuant to
Tex. Penal Code Ann. '' 7.01,  7.02 (Vernon
2003).

                                                                Evidence
at Trial

Texas
Department of Public Safety Sergeant James C. Rhodes testified that he was conducting
an undercover narcotics investigation involving Eric Gomez.  At the time of the
present offense, Sergeant Rhodes=s
plan was Ato go to the
next level with the individual@
that was supplying cocaine to Gomez.  Sergeant Rhodes called Gomez to set up
the purchase of an ounce of cocaine.  Gomez was receptive and wanted Sergeant
Rhodes to meet with him at his residence.  Sergeant Rhodes refused and arranged
to meet Gomez in the parking lot of the Buffalo Wild Wings Restaurant.  Gomez
agreed to sell Sergeant Rhodes an ounce of cocaine for $800.  Sergeant Rhodes
arranged for surveillance of the parking lot.

At
a little after 7:00 p.m., Sergeant Rhodes met Gomez in the parking lot.  Gomez
had another person in his vehicle with him.  At the time of trial, Sergeant
Rhodes still did not know the identity of the other person in Gomez=s vehicle.  Gomez told
Sergeant Rhodes that he wanted the money up front and that he would then go get
the cocaine from Ahis
guy.@  Sergeant
Rhodes, wanting to meet Gomez=s
source, told Gomez, A[W]e=re not going to do it that
way.@  Sergeant Rhodes
handed Gomez his cell phone, and Gomez made a call.  Because he did not want to
seem Aovereager,@  Sergeant Rhodes told
Gomez that he would leave for ten minutes and then he would return. 








Sergeant
Rhodes returned to the parking lot at 7:32 p.m.  Gomez made it clear to
Sergeant Rhodes that he did not have the cocaine at that time and that he was
the Ago-between.@  Sergeant Rhodes suspected
that Gomez=s source
was inside the restaurant and told Gomez that he would go with Gomez into the
restaurant.  Gomez was not Areally
willing@ to do the
deal that way but realized that that was the only way Sergeant Rhodes would
complete the transaction.  Gomez led Sergeant Rhodes to believe that they would
go into the restroom and that Gomez would contact his source there.

Sergeant
Rhodes entered the restroom first.  Then, Gomez and appellant entered
together.  Sergeant Rhodes reached into his pocket to pull out his money. 
Appellant Aimmediately
backed off@ and began
talking to Gomez.  Sergeant Rhodes threw his hands up and said, AYou know what, forget it. 
I don=t need it.  I=m going to leave.@  Sergeant Rhodes went out
to his vehicle with Gomez following him.  Gomez got into the vehicle and said, AHey, you know, you scared
him.  You know, he doesn=t
trust you.@  Sergeant
Rhodes told Gomez that he was going to leave.  Gomez responded by telling
Sergeant Rhodes that Ahe=s got it on him right now@ but that Ahe@ did not have a full ounce.  Gomez negotiated
a price of $400 for the half ounce that Ahe@ had plus $50 for Gomez for
setting up the deal.

Sergeant
Rhodes and Gomez again approached the restaurant.  When they entered the
restaurant, Sergeant Rhodes gave Gomez $400 and kept the extra $50 in his
pocket.  Sergeant Rhodes saw appellant sitting with a woman at a small table
along the wall.  Sergeant Rhodes asked Gomez, AIs
he at a table?@  Gomez
responded, AYes, he=s at a table.  He=s got it on him.@  Sergeant Rhodes told
Gomez that he was not going to leave Gomez=s
side and that he was Agoing
to watch it.@  Gomez
said A[t]hat=s fine@ and went over to appellant=s table.  Gomez went
straight to appellant=s
table and did not stop along the way.   Appellant and Gomez huddled together. 
Sergeant Rhodes saw Gomez=s
cupped hand (the same hand that Sergeant Rhodes had seen his money in) go
underneath the table.  Gomez then turned and walked straight back to Sergeant
Rhodes, nodding his head Alike
it=s good.@

The
two men left the restaurant together and Awalked
directly@ to Sergeant
Rhodes=s vehicle. 
Inside the vehicle, Gomez gave Sergeant Rhodes two packages of cocaine that
Gomez had had in his hand.  Sergeant Rhodes pulled out a small set of scales,
and Gomez weighed the cocaine at sixteen ounces.  Sergeant Rhodes gave Gomez
the remaining $50, and Gomez told him that the Anext
time@ would be easier
because Ahis guy@ had seen him.  Gomez asked
Sergeant Rhodes to break off a piece of the cocaine and give it to him. 
Sergeant Rhodes refused.








In
following up on his investigation, Sergeant Rhodes checked his cell phone and
secured the phone number that Gomez had called.  Sergeant Rhodes determined
that the phone number was appellant=s. 
Sergeant Rhodes further testified that, although he did not see Gomez=s hand meet appellant=s hand, he saw their torsos
meet and that he felt confident that an exchange took place.

On
cross-examination, Sergeant Rhodes testified that he did not hear what Gomez
and appellant discussed in the restroom.  Sergeant Rhodes also stated that
there were other people in the restaurant but that they did not block his
view.  He saw Gomez=s
hand with the money go under the table, but he did not see actually the money
leave Gomez=s hand.

The
substance Gomez gave Sergeant Rhodes was tested.  It was identified as
cocaine.  Without the packaging, the substance weighed 13.85 grams.

                                                     Application
of Law to the Facts

After
reviewing the evidence in the light most favorable to the verdict, we find that
a reasonable factfinder could have found appellant guilty under the court=s charge that contained
instructions on the law of parties.  Therefore, the evidence is legally
sufficient to support the conviction.  Likewise, after reviewing all of the
evidence in a neutral light, we do not find that the evidence supporting the
conviction is so weak that the verdict is clearly wrong and manifestly unjust
or that the verdict is against the great weight and preponderance of the
conflicting evidence.  Therefore, the evidence is also factually sufficient to
support the conviction.  The record before this court supports the trial court=s denial of the motion for
new trial and reflects no abuse of discretion.  All of appellant=s issues are overruled.

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

March 20, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.