**Opinion issued October 15, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-12-00486-CR

————————————————

**PHILLIP ERICC BOLDON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1270589**

---

### MEMORANDUM OPINION

Phillip Ericc Boldon appeals a judgment convicting him of murder. *See*
TEX. PENAL CODE ANN. § 19.02 (West 2011). A jury found Boldon guilty and
assessed his punishment at life confinement in the Texas Department of Criminal
Justice. Boldon raises four issues on appeal. He contends: (1) the evidence is

legally insufficient to support his conviction; (2) the trial court erred in overruling his motion for directed verdict; (3) the trial court erred in admitting a letter he allegedly wrote while confined in Harris County Jail; and (4) the trial court erred in denying his motion to suppress evidence found in his apartment.  We affirm.

## Background

At approximately 2:00 a.m. on June 2, 2010, Houston firefighters extinguished a car fire in the parking lot of Renaissance Village at Shadow Lake apartments.  They discovered a body in the car's back seat and contacted the Houston Arson Bureau and the Houston Police Department.

Arson investigator R. Koryciak of the Houston Arson Bureau determined the fire was an intentional fire fueled by an accelerant.  He based his determination on his knowledge of fire patterns and evidence collected from the scene, specifically, a Walmart water bottle and matching cap.  Investigator Koryciak observed a small amount of clear liquid in the bottle and smelled gasoline.  An accelerant detection dog alerted to the presence of accelerants on the bottle and cap.

HPD and the Harris County Medical Examiner's Office identified the deceased as Sarah Weyrick.  HPD determined the burnt car was registered to Weyrick, and the ME's Office later matched radiographs of the deceased's teeth to Weyrick's known dental records.

2

Dr. L. Flores performed Weyrick's autopsy and Dr. J. Love consulted. Both doctors concluded Weyrick was dead before the fire began. Based on decomposition and other factors, they estimated time of death was May 31 or June 1. Dr. Flores concluded cause of death was sharp force injuries to the neck. She ruled the death a homicide.

On July 15, the State charged Boldon with Weyrick's murder. At trial, the State argued Boldon murdered Weyrick at his Renaissance Village apartment on May 31 then set her body on fire on June 2.

Brett Scally, a mutual acquaintance of Boldon and Weyrick, testified that Weyrick was a prostitute and that he had given Boldon her phone number because Boldon "was interested in meeting somebody."

To prove that Boldon murdered Weyrick, the State used Renaissance Village surveillance video and Weyrick's cell phone records to establish a timeline for May 31. At 2:48 a.m., a young man with Boldon's coloring left Renaissance Village on foot through the back gate. At 2:51 a.m., Weyrick received a phone call from a pay phone located down the street from Boldon's apartment. Judging from the cell tower Weyrick's phone used to receive the call, Weyrick was near her apartment. At 3:02 a.m., the same man who had left Renaissance Village returned on foot through the back gate. At 3:24 a.m., Weyrick received another incoming call. This time, the call connected through a cell tower near Boldon's apartment.

3

Also at 3:24 a.m., a car identical to Weyrick's pulled into the Renaissance Village parking lot. The car never left the apartment complex.

Howard Martin, a known drug dealer, testified that he met Boldon in the Renaissance Village parking lot to conduct a "business transaction" sometime between 3:00 a.m. and 6:00 a.m on May 31. Martin further testified that Boldon paid him with cash and the cash had blood on it. When Martin asked him about the blood, Boldon responded that he had beaten up his girlfriend. In addition, the State introduced evidence that four brief phone calls—each of only a few seconds duration, indicating that the calls were probably not picked up—were made from Weyrick's phone between 6:29 a.m. and 6:31 a.m. on May 31 to Martin's phone number. Weyrick's phone records showed that she had never called Martin before that morning, and Martin testified that he did not know Weyrick and did not answer any of the calls.

Officer D. Smith, in the HPD crime scene unit, and C. Head, a criminalist in the HPD forensic biology division, also testified. Officer Smith observed blood spatter on Boldon's bedroom wall and closet. The State admitted photographs of the spatter into evidence. Officer Smith also collected carpet samples from Boldon's apartment that appeared to be stained with blood. Head confirmed the presence of blood and testified that DNA extracted from the carpet samples matched DNA extracted from Weyrick's remains.

4

The stain pattern on the living room carpet indicated the presence of stain on stain. Officer Smith testified that such a pattern can indicate removal efforts. When a person wets an already dried stain, the wetted area creates a new stain on top of the original stain. Head explained that some of the living room carpet stains tested negative for blood. She opined that the negative test results could have resulted from the application of a carpet cleaner containing bleach.

The State also introduced evidence implicating Boldon in the June 2 car fire. Specifically, the State introduced video of a man who looked like Boldon purchasing a Walmart-brand water bottle from a Walmart store near Boldon's apartment. The man had the same coloring as Boldon and, like Boldon, had a tattoo on his shoulder. The State introduced a copy of the receipt for the transaction that was time stamped June 2, 1:30 a.m., approximately thirty minutes before the fire began.

Finally, the State introduced a letter Boldon allegedly wrote while confined in Harris County Jail. In pertinent part, the letter said:

> My mom is gonna reveal some really messed up facts to you which is why I'm glad you have already moved. Nassier had made a Anonymous Tip to the police the day after it happened even though he had accepted money to clean up the mess. It's sad that things even come down to this.

Deputy Sheriff P. Galvan testified that he intercepted the letter from the jail's outgoing mail. The letter was addressed to Boldon's mother at her house,

5

indicated Boldon's jail cell as the return address, bore Boldon's SPN—a unique number used to identify Boldon within Harris County Jail—and appeared to be signed "P. Boldon, or B, with a B, scribble." Although the letter was addressed to Boldon's mother at Boldon's parents' house, it was written to a woman named Toni. The State introduced a photograph of a different letter addressed to Toni Marrese at Boldon's apartment.

The jury convicted Boldon of murder and assessed his punishment at confinement for life. This appeal followed.

## Discussion

### I. Sufficiency of the Evidence and Motion for Directed Verdict

In his first and second points of error, Boldon contends the evidence is legally insufficient to support his conviction and the trial court erred in overruling his motion for directed verdict. He emphasizes the State's reliance on circumstantial evidence and argues the State invited the jury to speculate on his guilt rather than infer his guilt from the evidence. He also emphasizes the State's failure to prove motive and HPD's failure to find a murder weapon.

### A. Standard of Review

We consider Boldon's first and second points of error under the same standard. *See Lewis v. State*, 193 S.W.3d 137, 139–40 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim.

6

App. 1996)) ("We treat a complaint of a denial of a motion for directed verdict as a challenge to the sufficiency of the evidence to support a conviction."). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *McGregor v. State*, 394 S.W.3d 90, 109 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)); *see also Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding *Jackson* standard is only standard to use when determining sufficiency of evidence). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *McGregor*, 394 S.W.3d at 110 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Id.* (citing *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008)). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Id.* (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). We afford almost complete deference to the jury's

7

determinations of credibility. *Id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). We resolve any inconsistencies in the evidence in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

**B.    Applicable Law**

A person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE § 19.02(b)(1), (2); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE § 6.03(a); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). A person acts knowingly or with knowledge of the nature of his conduct or circumstances when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE § 6.03(b); *Wise*, 364 S.W.3d at 903.

A murder conviction may be based on circumstantial evidence. *Temple*, 390 S.W.3d at 359 (citing *Clayton*, 235 S.W.3d at 778). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* (quoting

8

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

The jury may draw inferences from circumstantial evidence, but it may not draw conclusions based on speculation. *Id.* at 360 (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781 at 2789). An inference is a conclusion deducted from facts. *Hooper*, 214 S.W.3d at 16. Speculation is mere theorizing or guessing about the possible meaning of facts. *Id.*

## C. Analysis

To prove that Boldon murdered Weyrick, the State had to prove that Boldon knowingly or intentionally caused Weyrick's death or intended to cause Weyrick serious bodily injury and committed an act clearly dangerous to human life that caused Weyrick's death. *See* TEX. PENAL CODE § 19.02(b)(1), (2); *Temple*, 390 S.W.3d at 359.

We conclude the evidence supports a rational inference that Boldon murdered Weyrick. First, there is evidence that Weyrick was at Boldon's apartment around the time of her death. Dr. Flores and Dr. Love testified that

Weyrick died one or two days before the June 2 car fire. Surveillance video from May 31 shows a man with Boldon's coloring leaving Renaissance Village, the complex in which Boldon lived, at 2:48 a.m. Weyrick's phone records for May 31 indicate that she received a phone call from a pay phone near Renaissance Village at 2:51 a.m. The surveillance video shows the same man who left Renaissance Village returning to the apartment complex at 3:02 a.m. and a car identical to Weyrick's entering the apartment complex at 3:24 a.m. Martin's testimony places Boldon at his apartment between 3:00 a.m. and 6:00 a.m., at which time Boldon paid Martin with bloody money, which Boldon explained was bloody because he had beaten up his girlfriend. Weyrick's phone records indicate that she went to Boldon's apartment complex in the middle of the night, after getting a 2:51 a.m. call, and that the last four phone calls made from her phone were made between 6:29 a.m. and 6:31 a.m. to Martin, whom Weyrick had never previously called and who testified he did not know Weyrick. Another witness, Scally, testified that he gave Boldon Weyrick's phone number because Boldon was interested in meeting someone.

The DNA evidence demonstrated that Weyrick's blood was found inside Boldon's apartment. Officer Smith testified that he collected carpet samples from Boldon's apartment that appeared to be stained with blood. Head confirmed the

presence of blood and testified that DNA extracted from the carpet was a match to DNA extracted from Weyrick's body.

Finally, there is evidence that Boldon attempted to destroy evidence to conceal his guilt. Surveillance video shows a man with Boldon's coloring and a tattoo on his shoulder purchasing a Walmart water bottle like the Walmart water bottle found in the Renaissance Village parking lot to which the accelerant detection dog alerted. The receipt for the transaction shows the sale occurred half an hour before the fire began. Also, Officer Smith testified that the carpet in Boldon's apartment had been cleaned in an attempt to conceal the bloodstains. A clean-up effort is also referenced in the jailhouse letter that is the subject of Boldon's third issue.

Boldon contends that the State's failure to prove motive and HPD's failure to find the murder weapon render the evidence insufficient. But motive is not an element of murder and, therefore, is not required for a conviction. *See Temple*, 390 S.W.3d at 360; *Mays v. State*, 318 S.W.3d 368, 381 (Tex. Crim. App. 2010). Similarly, the discovery of a murder weapon is not required for a conviction. *See Temple*, 390 S.W.3d at 363 (holding evidence was legally sufficient to support murder conviction although murder weapon was never recovered).

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that Boldon intentionally or knowingly

11

caused Weyrick's death or intended to cause her death and committed an act clearly dangerous to human life that caused her death. Accordingly, we hold the evidence was legally sufficient to convict Boldon. *See Fountain v. State*, 401 S.W.3d 344, 355 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding evidence of defendant's proximity to complainant was legally sufficient to support murder conviction where, in addition to other facts, defendant was last-known person to see child alive and child was in defendant's care night before and day of child's disappearance); *Torres v. State*, 343 S.W.3d 297, 302 (Tex. App.—Eastland 2011, pet. ref'd) (holding that circumstantial evidence alone was legally sufficient to convict the defendant in part because law enforcement found the complainant's DNA on the defendant's clothing and gun); *Winningham v. State*, 334 S.W.3d 289, 308–09 (Tex. App.—Fort Worth 2010, pet. ref'd) (holding evidence legally sufficient to support murder conviction where complainant was found burned and wrapped in blue tarp, Medical Examiner testified complainant died from gunshot wounds and was dead before being set on fire, receipt from Academy sports store near defendant's apartment listing two purchases, a tarp and a rope, was found near body, rope was found in Academy sports bag in defendant's apartment, and complainant's blood was found in defendant's truck); *Wilson v. State*, 195 S.W.3d 193, 203–05 (Tex. App.—San Antonio 2006, no pet.) (holding evidence was legally sufficient to support murder conviction where, in addition other evidence,

12

neighbor's testimony placed vehicle of same make and model as defendant's in complainant's driveway at approximate time of murder and defendant's cell-phone records indicated defendant was traveling across town to within a few miles of complainant's home).

We overrule Boldon's first and second points of error.

## II. Admission of the Jailhouse Letter

In his third point of error, Boldon contends the trial court erred in admitting a letter the State contends he wrote while confined in Harris County Jail. Specifically, Boldon contends the letter was not properly authenticated under Texas Rule of Evidence 901(a). *See* TEX. R. EVID. 901(a).

### A. Standard of Review

We review the trial court's decision to admit evidence for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Our review is deferential. *Id.* We will not interfere with the trial court's ruling if the ruling is at least within the zone of reasonable disagreement. *Id.*

### B. Applicable Law

Under Texas Rule of Evidence 104(a), whether to admit evidence at trial is a preliminary question to be decided by the trial court. *Id.* at 637–38. A bedrock condition of admissibility is the relevance of the evidence to an issue in the case. *Id.* at 638 (citing TEX. R. EVID. 402). Evidence is not relevant if it is not

13

authentically what its proponent claims it to be. *Id.* Texas Rule of Evidence 901(a) requires the proponent to make a threshold showing that the evidence is what the proponent purports it to be. TEX. R. EVID. 901(a). Whether the proponent has crossed this threshold is one of the preliminary questions of admissibility contemplated by Rule 104(a). *Tienda*, 358 S.W.3d at 637–38. The trial court should admit proffered evidence on the introduction of evidence sufficient to support a finding of authenticity. *Id.* (citing TEX. R. EVID. 104(b)). The ultimate question, whether the evidence is what the proponent claims, then becomes a question for the fact finder. *Id.* In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic. *Id.* The preliminary question for the trial court is simply whether the proponent has supplied sufficient facts to support a reasonable jury determination that the evidence is what the proponent claims. *Id.* (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)).

Evidence may be authenticated in a number of ways, including a showing of distinctive internal characteristics: appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. TEX. R. EVID. 901(b)(4); *see also Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009) (holding proponent sufficiently authenticated robe as that worn by complainant in murder prosecution where paramedic testified

14

she recognized distinctive jagged marks near front zipper caused by paramedic's use of trauma shears to remove robe from complainant and blood stains near neck).

## C.    Analysis

We conclude the trial court did not abuse its discretion in admitting the jailhouse letter because the record reveals sufficient facts to support a reasonable jury's determination that the letter was in fact a letter written by Boldon. Boldon was in the jail in which the letter was found, and the writer identified himself as Boldon. The letter indicated Boldon's jail cell as the return address, and bore Boldon's SPN—a unique number assigned to Boldon to identify him within Harris County Jail. Additionally, the envelope containing the letter was addressed to Boldon's mother at Boldon's parents' house, and the letter was written to a woman who received mail at Boldon's apartment. Finally, the letter discussed facts seemingly related to Weyrick's murder.

Boldon argues the State failed to authenticate the letter in part because the State failed to present testimony from a witness with personal knowledge or handwriting analysis evidence. While Texas Rule of Evidence 901(b) acknowledges that testimony from a witness with knowledge and handwriting analysis are means by which a proponent *can* authenticate evidence, neither of these is required. *See* TEX. R. EVID. 901(b)(1)–(2). Moreover, absent evidence of tampering or other fraud, the mere possibility that someone other than Boldon

15

could have written the letter will not prevent us from finding that a reasonable juror could evaluate whether the evidence was what the State claimed. *See Druery*, 225 S.W.3d at 503. We hold that the trial court did not err in admitting the letter. *See id.* (defendant's letter was properly authenticated where the defendant was in a position to have mailed the letter from jail, the writer identified himself as the defendant, and the letter bore defendant's fingerprints and was addressed to the defendant's cousin, discussed facts known to the defendant about his case, and stated the return address was false because the writer did not want jail staff to read the letter); *Flores v. State*, 299 S.W.3d 843, 856–57 (Tex. App.—El Paso 2009, pet. ref'd) (holding State properly authenticated letter where letter was intercepted from defendant's mail, was signed with defendant's name, was addressed and sent to a woman with whom defendant had a personal relationship, indicated jail in which defendant was confined as return address, and bore defendant's SPN number).

We overrule Boldon's third point of error.

## III. Motion to Suppress

In his fourth point of error, Boldon contends the trial court erred in denying his motion to suppress a buccal swab of his cheek, the blood-stained carpet samples on which Head confirmed the presence of Weyrick's DNA, and Boldon's mail. Boldon's motion to suppress challenged the affidavit supporting the search

warrant for lack of probable cause. Boldon contends the trial court erred in denying his motion because it never reviewed the affidavit.

"When a defendant objects to the court admitting evidence on the ground that it was unlawfully seized and the State relies on a search warrant, in the absence of a waiver, reversible error will result unless the record reflects that the warrant was exhibited to the trial judge." *Cannady v. State*, 582 S.W.2d 467, 469 (Tex. Crim. App. [Panel Op.] 1979); *see Miller v. State*, 736 S.W.2d 643, 648 (Tex. Crim. App. 1987) (en banc) (holding that once warrant and supporting affidavit are produced by State and exhibited to trial court, it is the responsibility of the defendant to see that the warrant and the supporting affidavit are in the record if they are to be reviewed on appeal). "[I]f defense counsel desires a review of the search warrant and affidavit on appeal, it is necessary for him to offer for the record on a bill of exception copies of the search warrant and of the affidavit." *Cannady*, 582 S.W.2d at 469.

The record reflects that the trial court reviewed both the search warrant and the supporting affidavit. Because the trial court reviewed the affidavit, Boldon was required to ensure a copy of the affidavit was included in the record in order to preserve his challenge to the affidavit for appellate review. *See id.* The record does not include a copy of the affidavit. Accordingly, we hold Boldon failed to preserve this issue for our review. *See id.*; *Miller*, 736 S.W.2d at 648.

17

We overrule Boldon's fourth point of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle

Do not publish. TEX. R. APP. P. 47.2(b).